**LAWYERS TITLE INSURANCE CORPORATION, Appellant,**

v.

**William R. McKEE, Appellee.**

**No. 16284.**

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 2, 1962.

Rehearing Denied March 2, 1962.

Lefkowitz, Green, Ginsberg & Eades and Jack D. Eades, Dallas, for appellant.

Bowyer, Thomas, Crozier & Harris, William W. Sweet, Jr., and Robert H. Thomas, Dallas, for appellee.

MASSEY, Chief Justice.

From a judgment in favor of William R. McKee, as plaintiff policyholder, against defendant Lawyers Title Insurance Corporation, the latter appealed.

Judgment reformed and affirmed.

In 1880 a tract of land in Tarrant County, Texas, of rectangular shape but with the eastern boundary a meander line following a ravine, was owned by one Wiggins. The property was known as the Hudgins Homestead. Total acreage of the tract comprised some 72 acres, more or less.

Through a trade with one Nash, his neighbor, Wiggins conveyed approximately 2 acres out of said tract to Nash. By the deed of conveyance the eastern boundary of Wiggins' land became what may be considered as a straight line on the high ground immediately west of the ravine, the ravine passing to Nash, and Wiggins' remaining land comprised some 70 acres. Nash never recorded his deed, but began to run livestock on the 2 acres purchased, as have his heirs since that time.

Subsequently, Wiggins sold the 70 acres remaining to one Wilson. Chain of title thereto from Wilson ultimately passed to the plaintiff in this case. Wilson conveyed the land to one McGinnis, and in the deed the land conveyed was described as though it was the entire original Wiggins tract, the Hudgins Homestead, with the eastern boundary line given in metes and bounds as though it followed the meanders of the ravine, with the following additional language, "except a small tract of one acre conveyed to John W. Nash, by J. S. Wiggins, and wife, * * *."

McGinnis conveyed to one Coburn, and in the deed the land was described by metes and bounds identical to the description of the original Wiggins tract, with eastern boundary line the "meanderings of the ravine", and with the further recitation: "It being 78 acres more or less of the Thomas Easter 480 acre survey and known as the W. Hudgins homestead, and being the same land that was conveyed to Jack McGinnis by Jassie E. Wilson by deed dated 8th day of November 1930 and shown of record in Vol. 1102 page 635 Deed records of Tarrant County Texas."

Coburn conveyed to one Tibbits, likewise describing the land by metes and bounds, with the further recitation: "And being the same property described in warranty deed from Jack McGinnis and wife, Corine McGinnis, to R. Lee Coburn and wife, Aline Coburn, dated December 30, 1943, * * *."

Tibbits conveyed to plaintiff McKee. The tract conveyed was described as "Being a 73.45 acre tract located about 2 miles Southwest from the Town of Grapevine, Texas, being out of the THOMAS EASTER 480-Acre SURVEY, Patent #792, Volume 9, dated July 10, 1855, known as the W. Hudgins Homestead, described by metes and bounds as follows:" (here followed metes and bounds description in which instead of language as to the eastern boundary as "THENCE North 542 varas with meanderings of the ravine", the calls of the meanderings of such ravine were given according to a survey along same), with the further recitation: "It being the intention of the Grantors herein to convey to Grantee herein the same land described in Deed from R. Lee Coburn and wife, Aline Coburn to Robert Eugene Tibbits and wife, Helen Elizabeth Tibbits, by Deed dated February 12, 1948, filed for record March 16, 1948 * * *."

Pursuant to his purchase plaintiff McKee contracted with defendant company, subject to its examination of title, to insure his title to the property. It is not an issue and is undisputed that plaintiff believed he was purchasing land, the eastern boundary of which followed the meanders of the ravine, i. e., that the land included the 2 acres Wiggins had conveyed to Nash. He caused a survey of the land, including the 2 acres, to be prepared and furnished to the company.

The company issued to plaintiff, on September 12, 1953, the same date as plaintiff's deed from Tibbits was filed for record, its policy of title insurance. Thereby the company guaranteed to plaintiff, his heirs, executors and administrators that he had good and indefeasible title to the following real property: "Situated in Tarrant County, Texas, being a 73.45 acre tract located about 2 miles Southwest from the Town of Grapevine, Texas, being out of the THOMAS EASTER 480-Acre SURVEY, Patent #792, Volume 9, dated July 10, 1855, known as the W. Hudgins Homestead, described more fully by metes and bounds in Warranty Deed referred to below: * * *." The deed was that to plaintiff from Tibbits, material language from which has been heretofore quoted.

After entering into possession, and using the land extending to the ravine, plaintiff discovered that the heirs of Nash were claiming the 2 acres deeded to Nash by Wiggins. Plaintiff called upon the company to clear his title, but the company did nothing. Plaintiff then filed a trespass to try title suit to settle the title to the 2 acres. Prior to such time plaintiff placed the company on notice that the Nash heirs had declared that they would defend their titled in such suit. At all material times the company was kept informed, with continuous demands that it defend plaintiff's title. Even after trial of the suit and after judgment was entered, but in time for steps preparatory for an appeal to be taken therefrom, plaintiff continued to call upon the company to take such measures as it might deem appropriate to defend plaintiff's title. The company chose to do nothing, but to defer any action until judgment in the trespass to try title suit had become final.

The judgment in the trespass to try title case recited that plaintiff was a remote grantee, that he was on constructive notice of the fact of prior conveyance to Nash although the deed was not filed of record, by reason of mention made thereof in deeds in his chain of title, and that the Nash heirs were at all material times in continuous, open and notorious possession of the approximate 2 acres. The judgment divested plaintiff of his claim of title, and was dated November 30, 1959.

Plaintiff then brought his suit under the policy, seeking to recover the sum to which he was thereunder entitled, plus attorney's fees and expenses necessary to be expended in the trespass to try title suit. Trial was to a jury. The company did not except to the charge and there were no specially requested issues which appear to have been refused. Upon jury findings made the court entered a judgment in favor of the plaintiff and against the company for the sum of $6,000.00, being the difference in market value of the whole tract, or 72 acres, at $36,725.00, and the tract as reduced by the 2 acres as to which title failed at $30,725.00, as of the date of the trespass to try title judgment,—plus the sum of $2,200.00 as reasonable value of attorney's services in defending plaintiff's title in the trespass to try title suit, plus the sum of $52.10 as the reasonable expenses incurred in the same suit, or a total of $8,252.10.

In resolving points of error presented on appeal we will handle by stating questions, the answers we believe proper, and a discussion.

*First Question:* Is the company liable to plaintiff under the provisions of the policy because his title failed as to the 2 acres? We have concluded that the company is liable therefor.

Propriety of our answer basically depends upon the determination of whether

the property designated by the title insurance policy as that as to which title was guaranteed, included the 2 acres, or whether the company guaranteed the ravine as the eastern boundary.

■ Were this a suit on a warranty by plaintiff against his grantor, and even had therein been a reference to a prior deed *for all purposes,* the metes and bounds description would control. As notice in and of itself such a reference would have no standing to impair grantee's title where reference to it would not be necessary in the determination of the identity and boundary of the land conveyed. Where conveyance is specific, as by metes and bounds, there can be no mistake and no necessity for invoking the aid of a general description and the specific description would control. See 19 Tex.Jur.2d, p. 473 et seq., "Deeds", secs. 155 "Election by grantee", 156 "General description", and 157 "Particular description" (14–B Tex.Jur., p. 696, secs. 235, 236); 19 Tex.Jur.2d, p. 437, "Deeds", sec. 131, "Stating metes and bounds".

■ Such being the case in a suit against a grantor under a warranty, certainly would an insurer of the title, privileged to pass upon and actually designating the description of property it insures by its written contract of insurance, be bound under similar rules of construction, even without reference made to those additional rules of construction applicable to insurance contracts.

■ A situation or condition to which the protection of the policy was made subject, and as to which coverage was specifically excluded, was any instance where there might be "Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or any overlapping of improvements which a correct survey would show." The company contends that a "correct survey" would have shown that the land received by plaintiff did not include the 2 acres, but that the eastern boundary of the land was west of the ravine. Because thereof, says the company, the 2 acres were excluded as subject of insurance under the policy. No authority is cited by the company in support of the contention.

There is no merit to the contention of the company. As applied to the land intended to be insured by plaintiff and the company, the survey which showed the eastern boundary thereof at the ravine, and including the 2 acres in question, was a "correct survey" within the purport and intent of the policy. Houston Title Guaranty Co. v. Fontenot, 1960 (Tex.Civ.App., Houston), 339 S.W.2d 347, writ refused, n. r. e.; Chanoux v. Title Ins. Co., 1953 (Tex.Civ.App., El Paso), 258 S.W.2d 866, writ refused, n. r. e.

■ *Second Question:* If the company is liable under the policy of insurance because of the failure of title in plaintiff to the 2 acres, is the liability of the company controlled by provisions of the policy so that it would be an amount less than the actual difference in the value of the property as and when received (or at time loss should properly be deemed to have been sustained) and as it would have been but for the failure of title as and when the property was received (or at time failure of title should be deemed to have been sustained)? Our holding is that the liability of the company is so controlled. Provisions of the policy under which the amount of liability is limited must be honored in calculation and computation of the amount recoverable in the event of partial failure of title.

■ The policy contains a provision reading as follows: if "* * * such adverse claim or right shall have been held valid by a court of last resort to which either litigant may apply, and, if such adverse claim or right so established shall be for less than the whole of the property, then the liability of the Company shall be (1) only such part of the whole liability limited above as shall bear the same ratio to the (2) whole liability that the (3) adverse claim or right established may bear to the

406

(4) whole property." (Addition of the numbers and brackets supplied.)

The words following the numbers in the brackets in the above paragraph, which we have added for explanatory purposes, may be clarified when their proper interpretation is recognized. To us (1) means the value of that part of the property as to which title failed; (2) means the amount of the whole or maximum liability of the company if the entire title failed; (3) means the value of the right or property as to which title failed; and (4) means the value of the whole property had there been no failure of title. The whole liability, or maximum liability, would of course be the maximum amount payable under the policy, in this instance the sum of $18,362.50, the amount plaintiff paid for the property at the time of its purchase.

By calculation made from answers returned by the jury the value of the property as to which title failed was $6,000.00 on date the judgment was entered divesting plaintiff of his claim on the title to the 2 acres, and was $3,000.00 on the date the property was deeded to plaintiff. From other answers it is further more determinable that the value of the property as it would have been had there been no failure of title was $36,725.00 on date the judgment was entered divesting plaintiff of his title claim, and was $18,362.50 on the date the property was deeded to him. As already mentioned the whole liability under the policy was $18,362.50.

With such information a formula by which the monetary amount of the company's liability may be calculated would be:

(1) : (2) = (3) : (4), or
X : $18,362.50 = $6,000.00 : $36,725.00, or
X (company's liability) = $3,000.00.

In other words, the liability under the policy was limited to the sum of $3,000.00, although the actual monetary loss sustained, calculated as of the date of the judgment in the trespass to try title case, was $6,000.00. Texas Standard Form policies for title insurance, issued beginning at a time subsequent to the issuance of the instant policy, prescribe that the values for application to such a formula shall be taken as of the date any particular policy is issued, and were this done in the instant case the amount of the company's liability would be the identical figure, $3,000.00. For our discussion and example we have taken the values as of the date the judgment was entered in the trespass to try title suit; however, it not being necessary to the decision in this case we do not pass upon whether this, or the date the policy was issued, was the proper date for liability calculation purposes.

■ *Third Question:* Is the Title Company obliged, in an instance where its insured files a trespass to try title suit to recover the title to real estate which is covered by its policy of title insurance, to furnish at its own cost the expense necessarily incident to the prosecution of the suit as "a defense of the assured on a claim against or right to said land, or a part thereof, adverse to the title guaranteed"? We hold that it is ordinarily so obliged, and was in the instant case.

A provision of the policy in question reads as follows: "Said Company * * * shall, at its own cost, defend said assured in every suit or proceeding on any claim against or right to said land, or any part thereof, adverse to the title hereby guaranteed, provided the party or parties entitled to the defense shall, within a reasonable time after the commencement of such suit or proceeding, and in ample time for defense therein, give said Company written notice of the pendency of the suit or proceeding, and authority to defend, and said Company shall not be liable until such adverse claim or right shall have been held valid by a court of last resort * * *."

The circumstances giving rise to the necessity for plaintiff's filing of the trespass to try title case have been stated. Therefrom it is made plain that plaintiff at all material times attempted to get the company to defend his title. There is no question but that

his right to title was cast in issue the moment the defendants in said suit filed their answer and plead "not guilty". Plaintiff, being out of possession, stood in peril of losing the title by limitations if he did nothing, and was compelled to prosecute the suit so filed by bringing it to trial and obtaining an adjudication of his title. This was also necessary if plaintiff was to lay a predicate for his suit against the company under the policy, unless he was willing to forget his trespass to try title suit and in suit against the company assume the burden of proving that the Nash heirs' title was superior to his own. Possibly the plaintiff would have incurred attorney's fees and expenses at his peril if the company had come forward and confessed that his title had failed for all purposes of the policy of insurance, and admitted liability (except possibly the monetary extent thereof), etc. This the company did not do, but instead chose to wait watchfully in the apparent hope that plaintiff would prevail in the trespass to try title case.

Coverage of the policy being established in the trial between plaintiff and the company, all the benefits thereof were and are property rights to which plaintiff has shown himself entitled. The company was obligated by the policy to furnish, at its own expense, the legal services and expenses in court costs, witness fees and miscellaneous incidental expenses. In this the company defaulted, making it necessary for the plaintiff to furnish them at his own expense. Those reasonable and necessary fees and expenses supplied the measure of actual damages plaintiff sustained from the company's breach of contract in this particular, and such damages were properly awarded to him by the judgment. Fidelity Union Casualty Co. v. Wilkinson, 1936 (Tex.Civ.App., Dallas), 94 S.W.2d 763, affirmed and opinion adopted at 131 Tex. 302, 114 S.W.2d 530.

■ *Fourth Question*: In testing the application of statutes of limitation as applied to plaintiff's suit against the company, is the policy provision relative to the time for any suit brought thereunder controlling over the general rules for application of statutes of limitation in suits on contract? Our holding is that the policy provisions control.

The policy contains a provision that the "Company shall not be liable until such adverse claim or right shall have been held valid by a court of last resort". The adverse claim or right referred to, as applied to the instant case, would be the claim of the Nash heirs, litigated in the trespass to try title suit.

From the foregoing policy provision it would appear that plaintiff and the company contracted upon the matter of the date of the accrual of the company's liability thereunder, at least as applied to instances where an adverse claim or right is actually determined by a court of last resort. This is a matter upon which the parties could validly contract.

■ No appeal was taken from the judgment of the trial court, a Judicial District Court of Texas. That judgment became final. The company was afforded notice and reasonable opportunity to appeal the judgment in the trespass to try title case, which opportunity was declined. Under the construction proper to be given under these circumstances, the District Court was a court of last resort. Under principles of estoppel the company cannot be heard to contend to the contrary. Furthermore, its conduct amounted to a denial of liability under the policy and from and after the time liability was denied the policy clause under consideration was not one upon which the company was entitled to rely.

Since no statutory limitation period could be applicable to the instant case, suit on the policy filed less than one year from the date that judgment in the trespass to try title case became final upon failure of any party thereto to perfect an appeal, there was never raised for determination any issue of limitation and none need have been submitted to the jury. Even had the jury an-

swered the issues thereon which were submitted in favor of the company, which was not the case, the answers could have been disregarded for the matter is resolved as a matter of law. The company's contentions upon the matter of limitation are overruled.

Judgment is reformed so as to award plaintiff William R. McKee judgment for $3,000.00 as the part of his loss recoverable under the policy, rather than the $6,000.00 awarded by the trial court. Judgment in other respects, for attorney's fees and expenses, is not disturbed.

As so reformed, the judgment is affirmed. Costs are adjudged against the company, Lawyers Title Insurance Corporation.