Vincent PRENDERGAST et ux., Appellants,

v.

SOUTHERN TITLE GUARANTY COMPANY, Inc., Appellee.

No. 346.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 15, 1970.

Rehearing Denied May 13, 1970.

Larry F. York, Baker, Botts, Shepherd & Coates, Houston, for appellants.

Joel Cook, Schlanger, Cook & Cohn, Houston, for appellee.

TUNKS, Chief Justice.

This appeal involves a suit by the insureds against the insurer on a title guaranty policy. The trial court, at the conclusion of the plaintiffs' evidence, on motion of the defendant, withdrew the case from the jury and rendered judgment for the defendant. The plaintiffs have appealed. We reverse the judgment of the trial court and remand the case for another trial.

In January of 1964, Vincent Prendergast and his wife, plaintiffs in the trial court and appellants here, bought a tract of land, consisting of about 22 acres in the northwestern part of Harris County. They paid $10,233 for the land. In connection with the transaction the seller of the land furnished the buyers with a title guaranty policy issued by Southern Title Guaranty Co., Inc., defendant in the trial court and appellee here. The title policy was in the amount of the consideration paid for the land.

· In July of 1965, the Prendergasts entered into a contract with one Jack Milner under the terms of which contract the Prendergasts were to convey the 22 acre tract in question to Milner in part payment of the purchase price of a residence in the Memorial area of Houston. Milner required that he be furnished with a title guaranty policy issued by American Title Guaranty Co. A search by the title examiner for that company showed that the record title to a fractional interest in the 22 acre tract was in Mrs. Theresa Krug Matlage. American Title Guaranty Co. required that this defect be removed before it would issue its policy to Milner. Efforts to get a quit claim deed from Mrs. Matlage were unsuccessful. The deal with Milner was abandoned because of the Prendergasts' inability to furnish the title policy required.

In November of 1965 the Prendergasts filed this suit against Southern Guaranty Title Co., Inc. In their trial pleading they sought recovery for an alleged breach of the guaranty contract, and, alternatively, for alleged negligence on the part of the defendant in examining the title to the land in question.

It was admitted by appellee that in 1904 Theodore Krug acquired title to a 318 acre

tract of land of which the 22 acre tract in question was a part. The deed by which Krug acquired title to that land recited payment by him of consideration. At the time of the acquisition Krug was married to Emilie Krug. Krug and his wife Emilie had five children, one of whom was Mrs. Theresa Krug Matlage. Emilie Krug predeceased Theodore Krug and did not leave a will. In 1951 Theodore Krug died leaving a will by which all of his property was left to his other four children, not including Theresa Krug Matlage. Thereafter, the other four Krug children, not including Theresa Krug Matlage, were parties to a suit by which the 318 acre tract was partitioned between them. There is no record of any instrument by which Theresa Krug Matlage conveyed any interest in the 318 acre tract.

This evidence establishes, prima facie, that Theresa Krug Matlage is an owner of an undivided interest in the 22 acre tract, the title to which was guaranteed by the appellee. Her father's acquisition of the 318 acre tract during his marriage to Emilie made it, presumptively, community property. When Emilie died intestate Theresa Krug Matlage inherited an undivided interest in her mother's community interest in the 318 acre tract. There is no evidence that Theresa Krug Matlage has ever been divested of this interest. It is true that, as suggested by the appellee, there may be evidence by which a claim of title by Theresa Krug Matlage would be defeated, but that evidence is not in this record. On the existing record the interest of Mrs. Matlage is established.

It is the primary position of the appellee that the suit against it is premature because the Prendergasts have not been ousted of their title by Mrs. Matlage. Mrs. Matlage, while she has claimed her interest and refused to sign a quit claim deed, has not filed suit against the Prendergasts to establish her claim nor otherwise tried to take possession of any part of the 22 acres. Furthermore, the Prendergasts have not requested appellee to file suit against Mrs.

Matlage to clear up title to the property. On the other hand, in the trial court the appellee expressed a willingness to file and prosecute such a suit at its own expense if requested to do so. That expression of willingness to file such a suit was repeated in appellee's brief and in oral argument before this Court. Appellee does not deny that, if such suit resulted in the establishment of Mrs. Matlage's interest in the property, it would be liable to the Prendergasts under the terms of its policy. The Prendergasts have insisted on their right to recover money damages from the appellee even though no suit has been filed against them and they are still in possession of the property in question.

The language of the policy which is relevant to the issue before this Court is as follows: "The Southern Title Guaranty Co., Inc. * * * herein called Company, for values Does hereby guarantee to VINCENT PRENDERGAST and wife, LEOLA PRENDERGAST, herein styled assured, their heirs, executors and administrators, that they have good and indefeasible title to the following described real property: * * * (here is set out a description of the 22 acre tract) * * * SUBJECT TO: * * * (here are listed certain exceptions) * * *

"Said Company shall not be liable in a greater amount than actual monetary loss of assured, and in no event shall said Company be liable for more than

"TEN THOUSAND TWO HUNDRED THIRTY THREE AND NO/100 ------ Dollars, and shall, at its own cost, defend said assured in every suit or proceeding on any claim against or right to said land, or any part thereof, adverse to the title hereby guaranteed, provided the party or parties entitled to such defense shall, within a reasonable time after the commencement of such suit or proceeding and in ample time for defense therein, give said Company written notice of the pendency of the suit or proceeding, and authority to defend, and said Company

shall not be liable until such adverse interest, claim, or right shall have been held valid by a court of last resort to which either litigant may apply, * * *"

The basic question presented by this case is: may the assureds, under the above quoted contract, recover judgment against the insurer on proof that there is a defect in the title guaranteed even though no suit or proceeding has been filed by an adverse claimant asserting a claim adverse to the title guaranteed and no adverse claimant is in possession of the property or any part of it?

Neither party has cited any case with a direct holding in answer to that question and we have not found any such case. However there are a number of cases in which an insured has maintained suit on his title policy without a suit previously having been filed against him asserting an adverse claim to his title. Included among those cases are Southwest Title Ins. Co. v. Woods, (Tex.Sup.Ct.), 449 S.W.2d 773; Shaver v. National Title & Abstract Co., (Tex.Sup.Ct.), 361 S.W.2d 867; Stewart Title Guaranty Co. v. Lunt Land Corp., 162 Tex. 435, 347 S.W.2d 584; San Jacinto Title Guaranty Co. v. Lemmon, Tex.Civ. App., 417 S.W.2d 429, ref., n. r. e.; Lawyers Title Ins. Corp. v. McKee, 354 S.W.2d 401, no writ hist. While these cases do not present a complete answer to the question with which we are confronted, they demonstrate a practice of recognizing the right of an insured under a title guaranty policy to maintain a suit against his insurer for breach of that guaranty without any suit having been filed against him by any adverse claimant of title to the property in question. We recognize that those cases are distinguishable on their facts from this case in that in four of them the adverse claimant was in possession of part of the property of the insured and in the other, the Woods case, part of the insured's realty had been converted to personalty and removed. Also, in two of those cases, the Shaver case and the McKee case, the insured had called upon the title company to

file suit to perfect his title and had been refused. Here Mrs. Matlage is not in possession of any of the 22 acre tract and the appellee not only has not refused any request that it file suit but has expressed its willingness to do so when requested. While Mrs. Matlage is not interfering with appellants' possession of their property, she is asserting a claim, valid on its face, which is interfering with the appellants' ability to furnish a marketable title to their property.

We do not believe that the existence here of the facts which distinguish this case from those cited cases in which the insured's right to maintain suit against his title guaranty company without suit having been filed against him by an adverse claimant has been, at least, tacitly recognized, compels a conclusion that these insureds cannot properly maintain this suit against the appellee.

The basic contract between the parties was a guaranty by appellee that appellants were acquiring "good and indefeasible title" to the property they were buying. When appellants established prima facie that Mrs. Matlage had an interest in their property they proved a breach of that contract. In Shaver v. National Title & Abstract Co., supra, 361 S.W.2d at p. 868, the Court said: "The damages which plaintiffs seek are those resulting from the breach of the defendants' contract to guarantee plaintiffs a good and indefeasible title."

By the terms of the title policy the appellee also agreed to defend any suit filed against appellants by which an adverse claim of title to the subject property was asserted. In connection with the defense of such a suit it is provided that appellee "shall not be liable until such adverse interest, claim, or right shall have been held valid by a court of last resort to which either litigant may apply * * *." This is the language of the policy that appellee contends precludes the insureds from recovery for breach of the basic contract of guaranty until an adverse claim to the property has finally been adjudicated. We

do not agree. The quoted language is a limitation on the guarantor's liability in those situations wherein an adverse claimant has filed suit against the insureds and the guarantor has undertaken its defense. The words "such adverse interest, claim, or right" refer to the adverse interest which is the subject matter of such a suit filed against the insureds. The words "either litigant" also relate to such a suit. If there were any doubt in this connection it would be resolved by the rule that the language of insurance contracts shall be construed liberally in favor of the insured. Houston Title Guaranty Co. v. Fontenot, Tex.Civ. App., 339 S.W.2d 347, ref., n. r. e.

In Lawyers Title Ins. Corp. v. McKee, supra, the insured discovered that others were in possession of and claiming title to about two acres of a 72-acre tract which was the subject of a title guaranty policy. He called upon his title insurer to file suit against the adverse claimants to perfect his title. The title company refused to do so. The insured, himself, then sued the adverse claimant, which suit resulted in judgment for the adverse claimant for title to the two acre tract. The insured then filed suit against the title company on his title guaranty policy. It was held that he was entitled to recover his damages under the policy together with his expense in maintaining the suit against the adverse claimant. In its opinion the Court said 354 S.W. 2d at p. 407:

"* * * Plaintiff, being out of possession, stood in peril of losing the title by limitations if he did nothing, and was compelled to prosecute the suit so filed by bringing it to trial and obtaining an adjudication of his title. This was also necessary if plaintiff was to lay a predicate for his suit against the company under the policy, *unless he was willing to forget his trespass to try title suit and in suit against the company assume the burden of proving that the Nash heirs' title was superior to his own. * * *"* (Emphasis ours).

■ Appellants' first point of error is to the effect that the trial court erred in granting defendant's motion for instructed verdict because there was evidence that the defendant breached its title insurance contract with plaintiff, which breach caused damage to them. For the reasons stated above, that point of error is sustained.

■ The appellants' second point of error, based on the contention that they established a cause of action against appellee for its negligence in the examination of the title to the subject property, is overruled. Appellants did not employ appellee as an abstractor to examine title for them. Their vendor contracted with appellee to guarantee title in appellants. Appellee assumed no duty to appellants with reference to an examination of title. The only examination of title made or contemplated by the parties was that made by the appellee's agent for the use of appellee in determining whether to issue the title policy requested of it. Appellee's only duty to appellants was to protect them, in accordance with the terms of the title policy, from loss caused by a defect in their title to the property. Wolff v. Commercial Standard Ins. Co., Tex.Civ.App., 345 S.W.2d 565, ref., n. r. e.

The judgment of the trial court is reversed and the case is remanded.