SOUTHERN TITLE GUARANTY COMPANY, Inc., Appellant,

v.

Vincent PRENDERGAST et ux., Appellees.

No. 577.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Feb. 23, 1972.

Rehearing Denied March 22, 1972.

Second Rehearing Denied April 12, 1972.

Joel W. Cook, Schlanger, Cook & Cohn, Houston, for appellant.

Larry F. York, Baker & Botts, Houston, for appellees.

TUNKS, Chief Justice.

On February 17, 1964, the appellant, Southern Title Guaranty Company, Inc. issued to appellees, Vincent Prendergast and wife, Leola Prendergast, a policy of title insurance covering a 22 acre tract of land the Prendergasts had just bought. In July of 1965 when the Prendergasts undertook to sell the property to another person another title guaranty company refused to issue a title policy because of an outstanding undivided 10% interest in one Theresa Krug Matlage. The Prendergasts thereupon filed suit against appellants on the title policy. The first trial of this case resulted in the withdrawal of the case from the jury, on appellant's motion, and rendition of judgment for appellant. In Prendergast v. Southern Title Guaranty Company, 454 S.W.2d 803 (Tex.Civ.App.–Houston (14th Dist.) 1970, writ ref'd n.r.e.),

this Court reversed that judgment and remanded the case for another trial. The second trial, before a jury, resulted in a judgment for appellees. This appeal is from that latter judgment.

The Prendergasts paid $10,233 for the property in question in 1964. That was the amount of the title policy issued by Southern Title Guaranty Co. In July of 1965 the Prendergasts entered into a contract to sell the property to one Milner for $25,000. In that contract Milner required a title policy to be issued by another title guaranty company. That title company discovered the outstanding 10% undivided interest in Mrs. Matlage and declined to issue the requested policy for that reason. Because of the inability of the Prendergasts to furnish the required title policy the sale to Milner was not consummated. This suit was filed by the Prendergasts against Southern Title Guaranty Co. to recover, under the terms of their title guaranty policy, for their loss occasioned by the partial failure of their title.

The trial court submitted four special issues to the jury. In response to those issues the jury found: 1. The 22 acres, in July of 1965, before the discovery of the outstanding interest of Mrs. Matlage, had a market value of $25,000. 2. Such property, in July of 1965, after the discovery of such outstanding interest, had a market value of $10,200. 3. The outstanding interest of Mrs. Matlage was a proximate cause of the termination of the Milner contract. 4. The Prendergasts were damaged $14,800 by the termination of the Milner contract.

On that verdict the court rendered judgment for the Prendergasts for $10,233, the maximum liability provided by the title policy issued by Southern Title Guaranty Company.

Many of the appellant's points of error and much of the argument in its brief are complaints referable to matters decided by this Court in the former appeal of this case.

We decline to discuss further those matters. Such points are overruled.

The principal question involved in this appeal concerns the proper measure of damages by which to measure the Prendergasts' recovery under the title policy. The policy limits the liability of the insurer to the "actual monetary loss of assured" not to exceed $10,233. It provides that if there is established an outstanding interest in "less than the whole of the property, then the liability of the company shall be only such part of the whole liability limited above as shall bear the ratio to the whole liability that the adverse interest, claim or right established may bear to the whole property, such ratio to be based on respective values determinable as of the date of this policy." Similar language was discussed and construed in Lawyers Title Insurance Corporation v. McKee, 354 S.W.2d 401, 405 (Tex.Civ.App.–Fort Worth 1962, no writ). If that quoted language of the policy were applicable here the amount of the Prendergasts' recovery would be that sum which bore to $10,233 the same ratio as the value of the outstanding 10% interest bore to the value of the whole property. In the McKee case the opinion left some doubt as to whether the values to be determined in establishing such ratios should be values at the date of the policy or at the date that the outstanding interest was established. The language of the policy here, however, eliminates that doubt because it specifically recites that such values are "determinable as of the date of this policy."

The above quoted language of the policy establishing the formula for computing the insurer's liability where there is a loss of title to less than the whole of the property is applicable to the situation where an outstanding title to a physically identifiable segment of the property in question is established. It is not applicable where an outstanding partial right to the whole property is established. Thus, where an outstanding pipeline easement, not limited to specific boundaries within the insured property, was established, the policy provision

for proportionate payment was not applicable. Shaver v. National Title & Abstract Co., 361 S.W.2d 867 (Tex.Sup.1962). In this case, where the outstanding interest was a 10% ownership of the whole property and was not limited to any physically identifiable segment of the property, the proportionate payment provision is not applicable.

■ In .this title policy the title company agreed first to insure the Prendergasts against "actual loss", not to exceed $10,233, sustained by them because of the defect in the title they acquired and also agreed to defend any suit or proceeding against them callenging their title. The Prendergasts have elected to proceed against the title company to recover their loss although no suit or proceeding has been filed against them challenging their title. Thus the plaintiffs are limited in this suit to recover their actual loss shown by them to have resulted from the defect in their title. Their actual loss was the difference between what they paid for the land and what it was worth at the date of their purchase with its defective title. George v. Hesse, 100 Tex. 44, 93 S.W. 107 (1906). See Frey v. Martin, 469 S.W.2d 316 (Tex.Civ.App.–Dallas 1971, writ ref'd n. r. e.). The special issues submitted by the trial court did not elicit answers that would establish the proper measure of damages recoverable by the plaintiffs. The jury's answers 1 and 2 listed above were answers that related to the "benefit of the bargain" measure of damages. Such measure is applicable to a suit based on fraud in a transaction involving real estate. V.T. C.A., Tex.Bus. & Comm.Code Ann. Sec. 27.01 (1968). It is not applicable to a suit for damages involving title insurance. American Title Insurance Company v. Byrd, 384 S.W.2d 683 (Tex.Sup.1964).

■ The theory upon which the trial court submitted the special issues, to which the jury gave the answers listed as 3 and 4 above, is not entirely clear. Apparently the plaintiffs contended that they were entitled to damages represented by their loss of profits in the sale to Milner. There may be a situation wherein one suing for damages for breach of a contract to sell realty may be entitled to recover for loss of profits in a contemplated resale of the property. But to recover such damages the plaintiff buyer must show that such special damages were within the contemplation of the parties to the contract at the time it was made. Higginbotham v. Kyle, 294 S.W. 531 (Tex.Commn.App.1927, jdgmt. adopted); Naylor v. Parker, 139 S.W. 93 (Tex.Civ.App.–Fort Worth 1911, no writ). Here there is no evidence that the parties to this contract contemplated any loss of profits from a resale of it. In fact, all of the plaintiffs' testimony was to the effect that they bought the property intending to build a home on it, not for a contemplated resale.

Furthermore, Southern Title Guaranty Company did not contract to convey good title to the Prendergasts. The title company, in that portion of the contract on which these plaintiffs sued, agreed to insure the plaintiffs against actual loss resulting from the failure of their title. The plaintiffs' suit is not for breach of a contract to convey good title, it is a suit on a contract to insure against actual loss from failure of title.

The trial court's special issues and the jury's answers thereto did not establish any measure of damages recoverable by the plaintiffs herein. The appellant's points of error directed to such issues and answers are sustained. The court should have submitted a special issue inquiring as to the market value of the tract in question, at the date of purchase, with its encumbered title. The judgment for plaintiffs should have been the deficiency, if any, between that value and the $10,233 which the plaintiffs paid for the property.

The trial court, in its charge, instructed the jury that Mrs. Matlage owned an un-

divided 10% in the land in question. Appellant has stated a point of error challenging this instruction. Unless the plaintiffs proved as a matter of law that Mrs. Matlage owned such interest, the instruction was erroneous. The holding herein that the wrong measure of damages was submitted by the trial court requires the reversal of this case. As noted in the earlier opinion in this case, there was at least some evidence of such outstanding interest in Mrs. Matlage. The case will be remanded for another trial. We can not anticipate that the evidence relating to Mrs. Matlage's ownership will be the same at the next trial. It would, therefore, serve no purpose to review here the rather voluminous evidence relating to such ownership and make a holding as to whether it was established as a matter of law.

The defendant in the trial court undertook to prove that at a date after this suit was filed the executor of Mrs. Matlage's estate executed a quitclaim deed of the property in question to grantors in the plaintiffs' chain of title and their successors. That deed was dated April 7, 1971. The trial court excluded such evidence on the plaintiffs' objection. This ruling is the subject of points of error stated by appellant. Those points are overruled. As has been held above, the measure of the plaintiffs' damages under that provision of the policy pursuant to which they elected to sue was their loss as of the date of their purchase of the property. In Shaver v. National Title & Abstract Co., supra, the plaintiff sued under the same provision of a title policy as that under which these plaintiffs sued. In that case the damage resulted from a pipeline easement. During the course of the litigation and before the case reached the Supreme Court the pipeline was abandoned and the easement released. The title company took the position before the Supreme Court that this precluded the plaintiffs' recovery. The court said, 361 S.W.2d at pages 868 and 869:

"The damages which plaintiffs seek are those resulting from the breach of the defendants' contract to guarantee plaintiffs a good and indefeasible title. Those damages were suffered prior to the trial of this cause in the District Court and the amount of such damages, if any, suffered by plaintiffs has not been paid. *Plaintiffs' rights to recovery still exist and recompense can be made them only by a final determination of this case.* The case is not moot, and we overrule defendants' motion to dismiss." (Emphasis added)

The appellant contends that its maximum liability under its policy for loss caused by an outstanding 10% undivided interest should be $1,023.30, or 10% of the maximum liability under the policy. That contention is overruled. As we have held the proportionate payment provision of the policy is not applicable. Damages are to be computed on the basis of the difference between what was paid for the property and what it was worth. Even if it be assumed that the purchase price was the value of the property with perfect title, still the fact that there was an outstanding undivided 10% ownership would not mean that the plaintiffs' title with such defect was worth 90% of the purchase price. Humble Oil & Refining Co. v. Kishi, 291 S.W. 538 (Tex. Commn.App.1927, holding approved).

Because of errors in the submission of the question of damages the judgment of the trial court is reversed and the case remanded.

On Motion for Rehearing

The appellant has filed a motion for rehearing in which it contends, among other things, that this Court erred in sustaining the trial court's ruling in excluding evidence of the quitclaim deed from Mrs. Matlage's estate. It is argued that such proof

was admissible in mitigation of the plaintiffs' damages.

The record shows that after the discovery of the defect in their title the plaintiffs called on the defendant to cure such defect. On October 13, 1965, the defendant wrote to the plaintiffs a letter denying that it had "any further duty regarding this title." The Prendergasts filed their suit on November 30, 1965. The case was tried by the plaintiffs on the theory that they were entitled to damages for breach of the defendant's contract of guaranty. The defendant defended on the theory that the plaintiffs were not entitled to such recovery. It was not until that had been done that the defendant, about seven years after the date of the contract and almost six years after request was made of it that it cure the defect, procured the execution of the quitclaim deed which it offered to prove.

It may well be that the defendant was entitled to a reasonable opportunity to cure the defect in the title before the plaintiffs were entitled to maintain their suit for damages. That question is not before this Court because the defendant here was given such an opportunity and declined to accept "any further duty" in the matter. Their procurement of the quitclaim deed under the facts of this case, as a matter of law, was not a reasonable exercise of any right to cure the defect as an alternative to their duty to pay damages for their breach of the contract of guaranty. The defendant by its refusal to accept the reasonable opportunity to cure the defect has compelled the plaintiffs to seek other relief under the contract. After the plaintiffs, under such compulsion, have sued for their damages the defendant cannot defeat their claim by such a belated effort to cure the defect.

Appellant's motion for rehearing overruled.