**SOUTHERN TITLE GUARANTY COM-
PANY, INC., Petitioner,**

**v.**

**Vincent PRENDERGAST et ux.,
Respondents.**

**No. B–3379.**

Supreme Court of Texas.

April 18, 1973.

Rehearing Denied May 16, 1973.

Schlanger, Cook & Cohn, Joel W. Cook, Houston, for petitioner.

Baker & Botts, Larry F. York, Houston, for respondent.

REAVLEY, Justice.

This is a suit on a title insurance policy by the insured, Vincent Prendergast and wife, against the insurer, Southern Title Guaranty Company. Prendergast bought 22 acres of Harris County land for $10,233 in 1964. His owner's policy in that amount was issued by Southern Title Guaranty Company on February 17, 1964. In July of 1965 Prendergast entered into a contract to sell the 22 acres for $25,000. The prospective purchaser objected to the title on the ground that an undivided one-tenth outstanding interest was owned by Theresa Krug Matlage. Prendergast called upon Southern Title Guaranty Company to purchase the Matlage interest for him, but this was not done and the sale of 22 acres for $25,000 was lost. Prendergast then sued to recover the damages to which he was entitled under his title policy.

There have been two trials and appeals in the case. The first trial was terminated by a directed verdict in favor of the insur-

ance company, the ground therefor being Prendergast's failure to prove a title defect. However, on appeal the judgment was reversed and a new trial ordered. Prendergast v. Southern Title Guaranty Company, 454 S.W.2d 803 (Tex.Civ.App. 1970, writ ref'd n. r. e.). The Court of Civil Appeals held that Prendergast had made his proof of the prior ownership of a one-tenth interest by Theresa Matlage and that he would be entitled to recover in the event the company could not prove divestment of the Matlage interest to the benefit of the title acquired by Prendergast. It was also held that the assertion of the claim adverse to Prendergast warranted his suit for breach of the insurance contract even though the adverse claimant had not obtained a judgment validating the claim and was not interfering with Prendergast's possession of the land.

The second trial resulted in a verdict and judgment in favor of Prendergast and then an appeal which has again turned the case back for new trial. That appeal now reaches us with questions of the computation of damages, but first we deal with those questions treated by the first opinion of the Court of Civil Appeals. 454 S.W.2d 803. We agree with that holding and find no evidence in the second trial that would preclude Prendergast's recovery.

■ There is the question of whether the insured may sue on the policy merely because of the failure of his title. The insurance company insists that eviction should be a prerequisite to this suit, as it is to a suit for breach of a covenant of warranty. See, Rancho Bonito Land & Live-Stock Co. v. North, 92 Tex. 72, 45 S.W. 994 (1898). It bases this argument upon the following language of the policy:

[Said Company] shall, at its own cost, defend said assured in every suit or proceeding on any claim against or right to said land, or any part thereof, adverse to the title hereby guaranteed, provided the party or parties entitled to such defense shall, within a reasonable time aft-

er the commencement of such suit or proceeding and in ample time for defense therein, give said Company written notice of the pendency of the suit or proceeding, and authority to defend, and said Company shall not be liable until such adverse interest, claim, or right shall have been held valid by a court of last resort to which either litigant may apply. . . .

It follows that the insurance company is allowed the opportunity to complete its defense of a suit brought by an adverse claimant before being forced to pay the insured, but it does not follow that the company's covenant is limited to protection against an adverse claimant who moves to evict the insured. By the terms of the policy the company does more than agree to warrant and defend the insured against anyone claiming adverse title. The policy contract begins by saying in emphatic type: "The Southern Title Guaranty Co., Inc. . . . Does hereby guarantee to Vincent Prendergast and wife, Leola Prendergast . . . that they have good and indefeasible title to the following described real property . . . ." This is the basic assurance of the contract, and a failure of that guarantee gives rise to a cause of action for damages. It would be a substantial reduction of that assurance to make the insured bear his detriment until the owner of the superior title is found and sued to judgment; the policy will not be given that effect in the absence of language more explicit than the provision advanced by the company and quoted above.

■ The insurance company also insists that Prendergast has not proved the existence of an outstanding one-tenth interest in the property. If Theodore and Emilie Krug owned this property in community, when Emilie Krug died her daughter Theresa Krug Matlage inherited a one-tenth interest therein. Prendergast acquired the interests of the other children of Theodore and Emilie Krug, but not that of Theresa Krug Matlage. It is established that Theodore Krug acquired the

property in 1904 while he was married to Emilie. It is the presumption that the property was acquired as community. Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226 (1947). There are suggestions that Theodore Krug may have acquired the land as his separate property and that the brother of Theresa Krug Matlage may have perfected a limitation title by adverse use and occupancy, but there is no evidence to warrant finding the suggestions to be fact. It follows that Prendergast has made his case of the outstanding interest.

In the second trial a jury verdict was obtained, the findings being that—in July of 1965 when the resale was lost—the value of full fee title to the 22 acres was $25,000 while the value of the land with an outstanding one-tenth interest was only $10,200. The difference between these two figures being thought to be Prendergast's damages, the trial court rendered judgment for the amount of the policy limit, $10,233. This judgment has been reversed by the Court of Civil Appeals because its effect would be to give to the insured the benefit of his 1965 bargain rather than to indemnify him for the failure of the title guaranteed on the date of the policy. 478 S.W.2d 806. We agree that the trial court judgment was erroneous, but we disagree with the opinion of the Court of Civil Appeals in two respects which will become significant when the trial court reaches the case once more.

■ Our first disagreement is with respect to the effect of the proportionate payment provision of the policy. It provides that if there is established an outstanding interest in "less than the whole of the property, then the liability of the Company shall be only such part of the whole liability limited above as shall bear the same ratio to the whole liability that the adverse interest, claim, or right established may bear to the whole property, such ratio to be based on respective values determinable as of the date of this policy." The application of this provision is not limited to the situation where outstanding title to a physically identifiable segment of the acreage is established. It applies in all cases where there is a loss of title "for less than the whole of the property"—meaning anything less than the title and acreage insured. It simply means that the parties deal with the insured property on the assumption that its value is equal to the amount of the policy, and this assumption is to be applied whether the insured loses part or all of what the policy insures.

Thus, the amount recoverable on the policy bears the same ratio to the policy amount as the value of the outstanding interest bears to the value of the full insured title. The formula may be stated: the liability of the insurance company (X) is to the whole liability or policy limit (A) as the value of the outstanding interest (B) is to the value of the whole property without an outstanding interest (C), or $X/A=B/C$. Lawyers Title Ins. Corp. v. McKee, 354 S.W.2d 401 (Tex.Civ.App., 1962, no writ). Under the express terms of Prendergast's policy, the values of B and C are determined as of the date of the policy.

■ If the amount of the policy is the same as the value of what is insured, the assumption of the policy is correct and the recoverable loss is the value of the outstanding interest. This *value* may or may not bear the same fractional relationship to the total *value* as the undivided interest or portion of the land area (lost to the insured) bears to the whole title and property. A one-tenth interest in land might carry an added bargaining weight and be worth more than one-tenth of what the market would allow to the whole. Humble Oil and Refining Co. v. Kishi, 291 S.W. 538 (Tex.Com.App.1927).

■ If the market value of the whole property and the policy amount differ, the ratio of the quoted provision must be applied. This avoids any advantage to insurer or to insured. To illustrate, suppose the jury were to find the values for the 22 acres as of the date of the policy to have

been as follows: $25,000 for the whole, $4,800 for the one-tenth, and $20,200 for the land with an outstanding one-tenth interest. The approach of the trial court would be to consider the loss to be $4,800. The approach of the Court of Civil Appeals would be to allow recovery of the actual loss: "the difference between what they paid for the land and what it was worth at the date of their purchase with its defective title." 478 S.W.2d 806. This would allow no recovery, because they paid less for the land ($10,233) than it was worth with its defective title ($20,200). If the policy provision is applied and the ratio of $4,800 to $25,000 is used, the recovery would be 19.2% of $10,233 or $1,964.74.

In holding that this proportionate reduction clause applies to any defect in the insured ownership, whether it be because of a partial interest or because of an interest in partial acreage, we overrule Shaver v. National Title & Abstract Co., 361 S.W.2d 867 (Tex.1962), to the extent of the inconsistency.

A final question, perhaps a determinative one, is presented by the attempt of the insurance company to introduce into evidence a quitclaim deed from the executor of the estate of Theresa Krug Matlage, which deed is said to cure any defect in Prendergast's title. The trial court refused to admit the deed, and this ruling was upheld by the Court of Civil Appeals under the authority of Shaver v. National Title & Abstract Co., *supra*. However, Shaver is distinguishable upon this point as the release *discussed* there was not offered at the trial and only appeared in support of a motion to dismiss the cause when pending before the Supreme Court. It was held that the release did not make the case moot. Whether to admit a deed which cures the defect and mitigates the loss of damages of the insured is another question.

Title insurance is a contract of indemnity and the insured is limited to recovery for actual damages sustained. 9 Appleman, Insurance Law & Practice § 5217 at 24. 15 Couch on Insurance 2d § 57:179 at 806. The insurer should be allowed a reasonable opportunity to clear the title insured. Sala v. Security Title Ins. & Guarantee Co., 27 Cal.App.2d 693, 81 P.2d 578 (1938). In Stewart Title Guaranty v. Lunt Land Corp., 162 Tex. 435, 347 S.W.2d 584 (1961) it was said that the insured should "notify the title company of a prospective sale of the property so they could mitigate an impending loss under their policy by negotiating with the gas company for a removal of the pipe line or the purchase of its easement rights."

The Court of Civil Appeals has written that the "procurement of the quitclaim deed under the facts of this case, as a matter of law, was not a reasonable exercise of any right to cure the defect as an alternative to their duty to pay damages for their breach of the contract of guaranty." 478 S.W.2d 811. Southern Title Guaranty Company filed no suit to cure this defect because Prendergast did not request that action, and during the first trial and appeal the company expressed its willingness to prosecute such a suit. After that appeal and after the death of the adverse claimant, the company was finally successful in purchasing the quitclaim deed which it contends resolves the matter. We hold that it should not be precluded from making that proof and mitigating the damages owed to Prendergast. If upon a new trial it appears that the defect in Prendergast's title is cured, his damages will be no more than nominal.

The judgment of the Court of Civil Appeals is affirmed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

JOHNSON, J., not sitting.