**CHICAGO TITLE INSURANCE COMPANY and Eastland County Title Company d/b/a Lone Star Title & Abstract Company, Appellants,**

v.

**Tommy M. ALFORD and Wanda E. Alford, Appellees.**

No. 11–98–00023–CV.

Court of Appeals of Texas, Eastland.

Sept. 9, 1999.

Rehearing Overruled Nov. 4, 1999.

Perry J. Cockerell, Cantey & Hanger, L.L.P., Fort Worth, Randell Price, Cantey & Hanger, L.L.P., Dallas, Jim Parker, Attorney at Law, Comanche, for appellant.

Panel consists of: ARNOT, C.J., and McCALL, J, and DICKENSON, S.J.*

## OPINION

TERRY McCALL, Justice.

This is a suit by Tommy M. Alford and Wanda E. Alford (the Alfords) for negligence, recovery under a title insurance policy, breach of good faith and fair dealing, and deceptive trade practices against Chicago Title Insurance Company (Chicago Title) and Eastland County Title Company d/b/a Lone Star Title & Abstract Company (Lone Star). Based on jury findings that Lone Star was negligent and an agent of Chicago Title and that Chicago Title violated the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.46 (Vernon 1987 & Pamph. Supp.1999), the trial court entered judgment for the Alfords. We reverse and render.

The Alfords purchased a home in Eastland from Homestead Construction Com-

---

* Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

pany in 1978. The closing of their purchase was conducted by Trinity Title, an entity not a party to this suit. The Alfords borrowed part of their purchase price from Cram Mortgage; and a deed of trust dated October 3, 1978, from the Alfords to Cram Mortgage was recorded in the deed records. The deed of trust referred to a deed from Homestead Construction to the Alfords, but that deed was never recorded. Lone Star countersigned and issued to the Alfords an owner's policy of title insurance from Chicago Title. The title policy insured "good and indefeasible title" to the Alfords' residence as of October 20, 1978.

Ten years later, the Alfords executed an earnest money contract to sell their home to O.C. Hale and Madeline H. Hale (the Hales). It was then that the Alfords learned there was no warranty deed recorded in their name from Homestead Construction. Lone Star secured a replacement warranty deed from Homestead Construction, and the deed was filed for record on June 14, 1988. The second problem encountered was that abstracts of judgment liens, federal tax liens, and mechanic's liens against Homestead Construction were recorded in 1979 after the Alfords' purchase in 1978 but prior to recordation of the 1988 replacement deed to the Alfords from Homestead Construction; thus the Alfords could not convey clear record title to the Hales. At trial, the Alfords acknowledged that only the abstracts of judgment liens could have posed a problem because the federal tax liens and the mechanic's liens had expired before their proposed sale to the Hales.

The Alfords leased their residence to the Hales until the sale could be closed and then notified Chicago Title of their claim under the owner's title policy. Chicago Title first responded that the title policy of October 20, 1978, did not cover the abstract of judgment liens filed in 1979; but, in a letter dated July 25, 1988, Chicago Title wrote the Alfords that, although the title policy normally guarantees title as of the effective date of the policy, Chicago Title would issue a new title policy to the Alfords' buyer without taking exception to the abstracts of judgment. The Alfords and the Hales declined this offer. In a letter dated July 29, 1988, Chicago Title acknowledged to the Alfords that the abstracts of judgment were within the coverage of their title insurance policy but informed the Alfords that Chicago Title planned to simply wait for the claimants to attempt to enforce their liens. During the time that they were waiting for the liens to be barred by limitation, the Alfords demanded that Chicago Title pay them $60,000, the sale price to the Hales, as damages. Chicago Title declined to pay, claiming that the Alfords had not suffered a loss of title. The Alfords filed this suit in November 1988. Both judgment liens expired by August 6, 1989, and the Alfords then closed their sale to the Hales in January 1990. The case went to trial in 1997.

### Negligence Claim

The sole basis for the jury's finding that Lone Star was negligent was its failure to make certain that the Homestead Construction deed to the Alfords was recorded in 1978. The jury also found that Lone Star acted as the agent for Chicago Title.[1]

There are three necessary elements of negligence: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Firestone Steel Products Company v. Barajas*, 927 S.W.2d 608, 613 (Tex.1996); *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d

---

1. The title insurance business in Texas is extensively regulated. TEX. INS. CODE ANN. art. 9.01 et seq. (Vernon 1981 & Supp.1999). The terms "title insurance," "title insurance company," "title insurance agent," "escrow officer," and "closing the transaction" are defined. Even the title insurance policy must be issued on a form approved by the Texas Department of Insurance. There is no statutory requirement that the title insurance agent file the deed transferring title.

523 (Tex.1990). Both Lone Star and Chicago Title contend that they did not owe a legal duty to the Alfords to record or to make certain that the deed from Homestead Construction to the Alfords was recorded. We agree because the record is clear that Trinity Title, who is not a party, was the escrow agent who handled the closing of the Alfords' purchase of their home. Lone Star's only connection with the transaction was to issue the title policy with Chicago Title as the insurer.[2] Lone Star did not attend the closing.

█ A title insurance policy is a contract of indemnity. It is not a representation of the status of title. *Chicago Title Insurance Company v. McDaniel*, 875 S.W.2d 310, 311 (Tex.1994). The Alfords' argument that Lone Star (and Chicago Title) had a duty to make certain that the Homestead Construction deed was filed of record is based on their title policy's assurance that they had "good and indefeasible title" to their residence. Where a defendant's conduct gives rise to liability only because it breaches the parties' agreement, the plaintiff's claim sounds only in contract. *Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991). The Alfords' claim is governed by contract law and not by tort law.

The court in *Stone v. Lawyers Title Insurance Corporation*, 537 S.W.2d 55 (Tex.Civ.App—Corpus Christi 1976), *aff'd in part and rev'd and rem'd in part*, 554 S.W.2d 183 (Tex.1977), held that "[n]o cause of action for negligence exists against a title company for failure to discover defects in title prior to the issuance of the title policy." *Stone v. Lawyers Title Insurance Corporation*, supra at 64–65. Here, there was no defect in the title

conveyed to the Alfords on October 20, 1978. The only problem was the failure of Trinity Title to record the deed. If no cause of action for negligence exists where an agent or title insurer fails to discover a title defect, certainly one does not exist here. We hold that neither Lone Star nor Chicago Title owed the Alfords a duty under tort law to make certain the deed was filed.

### DTPA Claim and Attorney Fees

█ In *Chicago Title Insurance Company v. McDaniel, supra*, the Texas Supreme Court held that a title insurance policy is not a representation of the status of title and, as a matter of law, cannot form the basis of an actionable representation under the Texas Deceptive Trade Practices and Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §§ 17.41–17.63 (Vernon 1987 & Pamph. Supp.1999).

In *McDaniel*, Jerry and Christina McDaniel purchased a home from Couch Mortgage Company in September 1983. The McDaniels purchased a title insurance policy from Chicago Title which had substantially the same provision as the Alfords' title policy:

Chicago Title ... for value does hereby guarantee to the Insured ... that as of the date hereof, the Insured has good and indefeasible title to the estate or interest in the land described or referred to in this policy.

In December 1988, the bankruptcy trustee of Couch Mortgage notified the McDaniels that their property was subject to a preexisting lien that had been properly filed and recorded in April 1983. The McDaniels abandoned the property in October 1989;

---

**2.** The issuance of the title insurance contract between the Alfords and Chicago Title should not be confused with the closing of the real estate transaction which was handled by Trinity Title. See *Southwest Title Insurance Company v. Northland Building Corporation*, 552 S.W.2d 425, 428 (Tex.1977); "Garrett and McDaniel: DTPA Liability For Issuance of a Title Insurance Commitment," 26 TEX. TECH L. REV. 857, 863–870 (1995). Trinity Title, as escrow agent, owed a fiduciary duty to the parties. *Zimmerman v. First American Title Insurance Company*, 790 S.W.2d 690, 695 (Tex.App.—Tyler 1990, writ den'd); *Boatright v. Texas American Title Company*, 790 S.W.2d 722, 728 (Tex.App.—El Paso 1990, writ dism'd)(fiduciary duty to vendor to record vendor's deed of trust).

but, three months later, a federal bankruptcy court ruled that the McDaniels' purchase money lien on the property was superior to the preexisting lien. The McDaniels sued in late 1990, claiming that Chicago Title had violated the DTPA. In April 1991, Chicago Title secured the release of the preexisting lien.

The Texas Supreme Court held that Chicago Title had not made a representation regarding the status of title to the McDaniels' property; hence, there was no liability under the DTPA. However, the *McDaniel* court recognized that a title insurer may be held liable under the DTPA for an affirmative representation that is the producing cause of damages to the insured, citing *First Title Company of Waco v. Garrett*, 860 S.W.2d 74 (Tex. 1993). The *Garrett* case involved a "title commitment" which included an untrue affirmative representation that there were no restrictive covenants of record, and the purchaser relied upon the representation.

The Alfords argue that Chicago Title, in its "title policy," made an affirmative representation to the Alfords that they had good and indefeasible title and that the Homestead Construction deed would have had to be recorded for the title to be indefeasible. Therefore, because the Homestead Construction deed was not recorded, the subsequent judgment liens became a cloud on their title. Thus, the Alfords claim that they relied upon Chicago Title's representation of good and indefeasible title in contracting to sell their home to the Hales ten years later.

■ *Garrett* is distinguishable; and we find that, under *McDaniel*, Chicago Title's title policy did not make a representation to the Alfords within the meaning of the DTPA. To obtain an award of attorney's fees under the DTPA, a party must prevail on the DTPA claim and recover damages. See *State Farm Life Insurance Company v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995). Thus, we also reverse the award of attorney's fees to the Alfords. *Stewart Title Guaranty Company v. Becker*, 930 S.W.2d

748, 760 (Tex.App.—Corpus Christi 1996, writ den'd).

### Contract Claim

Unlike the plaintiffs in *McDaniel*, the Alfords also asserted a breach of contract claim and, by cross-point, complained of the trial court's refusal to submit their breach of contract issues.

■ The title policy states that "Chicago Title ... does hereby guarantee to the herein named Insured ... *that as of the date hereof*, the Insured has good and indefeasible title to the estate." (Emphasis added) On October 20, 1978, the date of the title policy, the Alfords did have good and indefeasible title. The problem was Trinity Title's failure to record the deed from Homestead Construction in the Eastland County deed records. The recording of a deed is not essential to an effective conveyance of title, *Burris v. McDougald*, 832 S.W.2d 707, 709 (Tex.App.—Corpus Christi 1992, no writ); and, as of October 20, 1978, the judgment liens against Homestead Construction had not arisen or been filed for record.

■ The only duty imposed by a title insurance policy is the insurer's duty to indemnify the insured against losses caused by defects in title as of the date the policy is issued:

> Title insurance differs from most other insurance lines in important ways. It is paid for by a single premium. ... It covers the condition of the title only as of the policy's date, and defects arising afterward cannot be the basis of a claim.

ROGER A. CUNNINGHAM, WILLIAM B. STOEBUCK & DALE A. WHITMAN, THE LAW OF PROPERTY § 11.14 (2nd ed.1993).

■ The Alfords took possession of their home before the Homestead Construction liens were filed in 1979, and it has long been the law that constructive notice of title by possession of property is equivalent to the constructive notice by

registration of the deed to property. *Wimberly v. Bailey*, 58 Tex. 222 (1882); *Mainwarring v. Templeman*, 51 Tex. 205 (1879); *Bell v. Smith*, 532 S.W.2d 680, 686 (Tex.Civ.App.—Fort Worth 1976, no writ).

The Alfords argue that, since TEX. REV. CIV. STAT. art. 1289 (now TEX. PROP. CODE ANN. § 13.001 (Vernon 1984 & Pamph. Supp.1999)) provided that an unrecorded conveyance of real property was void as to creditors without notice, the liens created a cloud on their title. This statute (now Section 13.001), though changed from time to time, has been a part of our jurisprudence since before Texas was a State. All versions have provided that unrecorded instruments are void as to "all creditors." In *Paris Grocer Co. v. Burks*, 101 Tex. 106, 105 S.W. 174 (1907), the Texas Supreme Court pointed out that our Texas courts have held "all creditors" to mean:

> [A]ll creditors who have acquired liens without notice of the deed....It is equally well settled, however, that an open, exclusive, and visible possession, maintained by the holder of the unrecorded deed when the right of the creditor attaches, is notice of the right under which it is held.

*Paris Grocer Co. v. Burks, supra* at 175. The Alfords' possession of their home gave constructive notice to the judgment creditors of Homestead Construction even though their deed was unrecorded. *Alkas v. United Savings Association of Texas, Inc.*, 672 S.W.2d 852, 859 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Aldridge v. North East Independent School District*, 428 S.W.2d 447, 449 (Tex.Civ.App.—San Antonio 1968, writ ref'd). The Alfords' deed of trust to Cram Mortgage, duly recorded, also gave notice of the unrecorded deed to the Homestead Construction creditors.

Chicago Title's first letter to the Alfords took the position that the title policy of October 20, 1978, did not cover the abstracts of judgment liens filed in 1979. However, Chicago Title subsequently advised the Alfords that the abstracts of judgment liens were within the title policy's coverage but that Chicago Title planned to see if the liens would simply expire during the next year. Even assuming that the liens were a cloud on the Alfords' title, the liens expired before this case went to trial. The situation at the time of trial was similar to *McDaniel* where the title insurer (also Chicago Title) secured the release of the preexisting lien after the McDaniels had filed suit. As the *McDaniel* court stated:

> A title insurance policy is a contract of indemnity. *Southern Title Guar. Co. v. Prendergast*, 494 S.W.2d 154, 158 (Tex. 1973). In other words, the only duty imposed by a title insurance policy is the duty to indemnify the insured against losses caused by defects in title. See *Martinka v. Commonwealth Land Title Ins. Co.*, 836 S.W.2d 773, 777 (Tex.App.-Houston [1st Dist.] 1992, writ denied); see also *Stewart Title Guar. Co. v. Cheatham*, 764 S.W.2d 315, 320–321 (Tex.App.-Texarkana 1988, writ denied). Thus, Chicago Title's issuance of a policy ... constituted an agreement to indemnify the McDaniels *against losses* caused by any defects. (Emphasis added)

*Chicago Title Insurance Company v. McDaniel, supra* at 311. Although Chicago Title said that the liens were covered under the title policy, the company consistently took the position that the Alfords had never suffered a whole or partial loss of title. Because there was never a loss of title, we find that there was no failure of the Alfords' title which would provide a basis for recovery under the Alfords' title insurance policy.

The *Southern Title Guaranty Company, Inc. v. Prendergast*, 494 S.W.2d 154 (Tex. 1973), decision, cited above by the *McDaniel* court, also supports this conclusion. That case involved an action by an insured against the title insurer to recover for a claimed loss incurred as a result of a sale lost due to partial failure of title. There was an outstanding 1/10th interest in the

land which the title insurer missed when issuing the title policy, and this problem became known when the insured tried to sell the land. The Supreme Court held that damages were to be determined as of the date of the title policy, noting that the title policy provided that, if there is established an outstanding interest in:

> [L]ess than the whole of the property, then the liability of the Company shall be only such part of the whole liability limited above as shall bear the same ratio to the whole liability that the adverse interest, claim or right established may bear to the whole property, *such ratio to be based on respective values determinable as of the date of this policy.* (Emphasis added)

*Southern Title Guaranty Company, Inc. v. Prendergast, supra* at 157. The Alfords' title policy contains a similar provision; and, under *Prendergast,* there were no damages as of the date of the Alfords' title policy.

The trial court properly refused to submit the Alfords' breach of contract issues.

### Breach of Good Faith and Fair Dealing

The jury found that Chicago Title failed to comply with its duty of good faith and fair dealing to the Alfords but found that there were no damages. By cross-point, the Alfords complain of the trial court's refusal to submit their requested question on exemplary damages. The Alfords should have filed a notice of appeal. TEX. R.APP.P. 25.1(c).

■■■ An insurer breaches its common-law duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear. *State Farm Fire & Casualty Company v. Simmons,* 963 S.W.2d 42, 44 (Tex.1998); *Universe Life Insurance Company v. Giles,* 950 S.W.2d 48, 56 (Tex.1997). Chicago Title's indemnity liability never became "reasonably clear." The record before us reflects that there was no failure of the Alfords' title at any time. Under the circumstances, Chicago Title did not breach its duty of good faith and fair dealing. See *Martinka v. Commonwealth Land Title Insurance Company,* 836 S.W.2d 773, 776 (Tex.App.—Houston [1st Dist.] 1992, writ den'd); *Tri–Legends Corporation v. Ticor Title Insurance Company of California,* 889 S.W.2d 432, 442 (Tex. App.—Houston [14th Dist.] 1994, writ den'd)(summary judgment for insurer as to duty of good faith and fair dealing because no failure of title occurred).

■■■ Even if there had been a breach of good faith and fair dealing, the jury found no actual damages. The general rule is that punitive damages are not recoverable without a recovery of actual damages. *Federal Express Corporation v. Dutschmann,* 846 S.W.2d 282, 284 (Tex. 1993).

The judgment of the trial court is reversed, and judgment is rendered that Tommy M. Alford and Wanda E. Alford take nothing.