Sattler, Appellant, *v.* Philadelphia Title Insurance Company.

Argued March 23, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Wesley H. Caldwell,* with him *Roper & Caldwell,* for appellant.

*Herman H. Greenberg,* for appellee.

OPINION BY WRIGHT, J., June 15, 1960:

We are here concerned with an action in assumpsit for breach of a policy of title insurance. The case was tried before Honorable EMANUEL W. BELOFF without a jury. Plaintiff claimed damages in amount of $3,-500.00, which was the policy limit. The trial judge found that there had been a breach of the policy, but assessed only nominal damages in amount of six cents. Plaintiff's motions for judgment n.o.v. and for a new trial were subsequently dismissed. This appeal followed. We then remitted the record for the entry of judgment.

On September 3, 1941, Florence Plawa Adams purchased from Hyman Hoffman premises situate at 825 North Marshall Street in the City of Philadelphia. On December 28, 1955, Florence Plawa Adams Zaronka and Alexander J. Zaronka, her then husband, conveyed the premises to Benjamin E. Sattler for the purchase price of $3,500.00. On January 11, 1956, the Philadelphia Title Insurance Company, hereinafter referred to as the Company, issued and delivered to Sattler its Title Insurance Policy No. 104985 in the sum of $3,-500.00, which policy recited that, in consideration of the premium paid, the Company "does hereby insure ... that the title of the Assured to the estate, mortgage or interest described in Schedule A hereto annexed, is good and marketable, and clear of all liens and encumbrances charging the same at the date of this Policy; saving such estates, defects, objections, liens, and incumbrances as may be set forth in Schedule B ... and any loss shall be payable upon compliance by the As-

sured with the conditions hereto attached and not otherwise". Policy conditions 2 and 9 are set forth in the footnote.[1]

The record discloses that, on the date the policy was issued, there were two alleged encumbrances which were not excepted in Schedule B. One arose by virtue of a judgment entered on April 1, 1938, by William Lipshutz against Anthony Plawa, father of Florence Adams. This judgment was revived by a series of writs of scire facias issued against Plawa prior to his death on March 8, 1945. On December 19, 1946, a scire facias was issued wherein Florence Adams was named as a terre tenant, and judgment was entered thereon on January 24, 1947. This judgment was revived by a writ of scire facias issued January 21, 1952, again naming Florence Adams as terre tenant. On April 10, 1952, judgment was entered thereon. On April 10, 1956, damages were assessed on this judgment in the sum of $11,944.44. On the same date, a writ of fieri facias was issued by virtue of which the sheriff advertised the

---

[1] "2. The Company will, at its own cost, defend the Assured in all actions of ejectment or other proceedings founded upon a claim of title, lien or incumbrance prior in date to this Policy and not excepted therein. In case any person having an interest in this Policy shall receive notice or have knowledge of any such action or proceeding, it shall be the duty of such person at once to notify the Company thereof in writing, and secure it the right to defend the action. Unless the Company shall be so notified within fifteen days, the insurance shall be void as to such person.

"9. If claim be made because of unmarketability or defect of title, or of liens or incumbrances not excepted in the Policy, the Company shall have the right to take the estate or interest insured at its then market value, irrespective of the alleged defect, lien or encumbrance, and shall be entitled to a conveyance or assignment thereof, with proper allowance for all defects, liens or incumbrances not insured against by the Policy. And no action shall be brought against the Company for any claim under this Policy until thirty days after notice in writing of such claim".

premises at 825 North Marshall Street for sale. At the instance of the Company, this sale was stayed by order of court. It is unnecessary to detail the subsequent proceedings, including an abortive motion to strike,[2] other than to note that, on April 1, 1959, the purported lien of this judgment was released as to the premises at 825 North Marshall Street.

The other encumbrance arose by virtue of a bill in equity, filed May 9, 1947, in which it was alleged that the conveyance from Hoffman to Florence Adams was made with the intent to defraud the rights of William Lipshutz, and that, although title was taken in the name of Florence Adams, the actual purchase was made by Anthony Plawa. No further steps were taken in the equity case until April 11, 1956, when judgment was entered for failure to file an answer. On May 4, 1956, at the instance of the Company, a rule was granted to show cause why Sattler should not be joined as a party defendant and let into a defense. On November 14, 1958, the rule was made absolute. On March 31, 1959, this case was settled, discontinued and ended as to Sattler.

The instant complaint sets forth the purchase of the premises at 825 North Marshall Street, the issuance of the title insurance, and the subsequent disclosure of the judgment entered against Florence Adams as terre tenant. The complaint further alleges that, at the time Sattler acquired title and at the time of the issuance of the policy, his title "was not good and marketable and clear of all liens and encumbrances", that the market value of his title was worthless, and that he had suffered a loss in the sum of $3,500.00. The Company answered that the judgment against Florence Adams as terre tenant was not a lien on the premises for the

---

[2] See *Lipshutz v. Plawa*, 393 Pa. 268, 141 A. 2d 226.

reason that she "was not a terre tenant in fact". The answer further alleged that the Company "was ready at all times to insure the title to any conveyance of said premises by the plaintiff", that Sattler had "enjoyed uninterrupted possession and maintained control of said premises", and that he had suffered no loss. At the trial the material facts were stipulated. Sattler then offered the testimony of a realtor who stated that, at the time of purchase on December 28, 1955, the property had a market value of $3,500.00. In reply to a hypothetical question as to the market value of the property in May, 1956, assuming that it was subject to the record judgment, the witness stated, over objection, that the property would have no value. After mature deliberation, the hearing judge filed his decision, June 11, 1959, finding that the alleged encumbrances had no legal validity, and "that the plaintiff herein, although harassed and annoyed, got what he purchased".

Appellant contends that the Company cannot assert the invalidity of the lien of the judgment, and of the lis pendens arising from the equity action, as a defense to avoid liability on the policy. He argues "that a title insurance agreement is a guarantee that the title is good and marketable and that when this insurance agreement was written, at the moment that it is written, and there was a defect in the title which is not separated or excepted from the policy, the title agreement is breached". His position is that the obligation of the insurance contract was not merely against valid liens, but against liens charging the property insured, and that the title would be clouded and unmarketable as the result of any lien against the same, whether the lien was valid or not. To accept this proposition would mean that the insured could recover on the policy merely by showing an unexcepted claim, whether or not the claim was meritorious, and whether or not the insured suffered any loss resulting therefrom.

The correct rule, as laid down by our Supreme Court, is that a contract of title insurance is an agreement to indemnify against loss through defects of title: *Foehrenbach v. Title & Trust Co.*, 217 Pa. 331, 66 A. 561. See also *Pennsylvania Laundry Co. v. Land Title & Trust Co.*, 74 Pa. Superior Ct. 329. In the *Foehrenbach* case it was pointed out that the purposes of title insurance is to "indemnify those who actually suffer the loss". In the case at bar, it was incumbent upon appellant to establish a loss covered by the provisions of the contract: *Fox Chase Bank v. Wayne Junction Trust Co.*, 258 Pa. 272, 101 A. 979. This simply means that the insured must show a loss resulting from the unexcepted encumbrances. In other words, a title insurance policy is a contract of indemnity and not of guaranty. Unless and until a loss occurs, there is no liability. See *Narberth Building & Loan v. Bryn Mawr Trust Co.*, 126 Pa. Superior Ct. 74, 190 A. 149.

In the case at bar the court below determined that the alleged encumbrances were actually not valid. Indeed, appellant makes no assertion to the contrary. It is true that the judgment and the lis pendens were clouds on the title: *Octoraro Water Co. v. Garrison*, 271 Pa. 421, 114 A. 638; *Onorato v. Carlini*, 272 Pa. 489, 116 A. 387. Consequently, a right of action for technical breach of the policy inured to appellant. However, a second issue remains, namely, what was the amount of appellant's loss. He is entitled to recover only for loss which arose by reason of the defects or encumbrances against which the Company covenanted to indemnify. See *Whiteman v. Title & Trust Co.*, 25 Pa. Superior Ct. 320. Appellant argues that, in *Fifth Mutual Building Society of Manayunk's Appeal*, 317 Pa. 161, 176 A. 494, the measure of damages in such a case was stated to be the difference in the market value of the property subject to the encumbrance and what the market value of the property would have been had

it not been subject to the encumbrance. But this measure of damages necessarily pre-supposes the validity of the encumbrance. Without proof of actual loss there can be no damage. Appellant attempted, by means of expert testimony, to prove the extent of his damage, but he failed to establish that he had actually sustained a loss. As stated by Judge BELOFF in his well-considered opinion:

"We agree with the contention of the plaintiff at bar and it is perfectly obvious that the Title Insurance Company failed to reveal and disclose to the plaintiff the encumbrances existing on the face of the record against the property. Indeed, we are of the opinion that the plaintiff was annoyed and harassed thereby and perhaps incurred legal expenses. If there were a formula in the evidence before us upon which to predicate a finding to compensate the plaintiff for these items, we would be glad to do so.

The plaintiff does not and cannot on the record before us support a claim for the damages he seeks, namely, the face amount of the policy. For, having disposed of the validity and effect of the bill in equity and the lis pendens in the proceedings in the Common Pleas Court, we are of the opinion that Florence Adams, in the eyes of the law, was never a terre tenant, and that the judgment, lien and assessment of damages against her property had no effect or validity in law".

Judgment affirmed.