STEWART TITLE GUARANTY COMPANY, Appellant,

v.

J. Richard CHEATHAM, et al., Appellees.

No. 9606.

Court of Appeals of Texas, Texarkana.

Dec. 28, 1988.

Rehearings Denied Dec. 28, 1988 and Jan. 18, 1989.

Paul R. Tinsley, Morris, Tinsley & Snowden, Houston, for appellant.

Raymond Krell, Krell & Torigian, Houston, for appellees.

GRANT, Justice.

Cheatham, Norwood and Peterson d/b/a Cheatham–Norwood–Peterson Investments brought a Deceptive Trade Practices–Consumer Protection Act (hereafter referred to as DTPA) action against Stewart Title Guaranty Company and obtained judgment based on the failure of a title insurance policy to reveal the existence of an easement across the insured property. Stewart Title Guaranty Company appeals the adverse judgment.

Cheatham, Norwood and Peterson, a partnership, (hereafter referred to as Cheatham), purchased an apartment building on or about July 13, 1979, for $242,000. Stewart Title Guaranty Company (hereafter referred to as Stewart Title) issued a title insurance policy on the property for that amount on that date. In early 1983, Cheatham began efforts to sell the property and had obtained an offer to purchase for $280,000 by June 1983. The prospective purchaser discovered the existence of a previously unknown easement and city storm sewer which had been in place since 1916. The purchaser thereupon refused to complete the transaction. Stewart Title acknowledged liability to Cheatham subject to the terms of the policy for loss caused by the defect. An appraiser hired by Stewart Title determined that the value of the property had declined $26,000 because of the easement. Cheatham reduced the sales price by $26,000 but obtained no further offers to purchase. He continued to reduce the price (allegedly at the suggestion of Stewart Title) and eventually obtained an earnest money contract for $200,000. Stewart Title refused to pay any damage amount above their original $26,000 offer. Cheatham refused to complete the sale and filed suit.

Cheatham alleges that Stewart Title violated the DTPA, Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1977) (amended 1979), by failing to inform him of the existence of the easement, which constituted a breach of contract and a breach of warranty. Specifically, he alleges that the existence of the easement causes the property to be unmarketable.

The jury found that Stewart Title's failure to disclose that the property was subject to an easement was a false, misleading or deceptive act or practice which was a producing cause of damages to Cheatham and further found that Stewart Title represented that the title policy had characteristics, uses or benefits that it did not have, which was a producing cause of loss. The jury also found that Stewart Title made and breached an express warranty to Cheatham that the land had no easements, which was a producing cause of loss, and that the omission of the easement was unconscionable and a producing cause of damages. The jury assessed damages at a loss of $80,000 in the fair market value of the property, and an additional $24,000 for "out-of-pocket costs" suffered as a result of the easement. Stewart Title stipulated that it had breached its contract with Cheatham and does not contest the jury's finding of $80,000 as Cheatham's loss.[1]

The jury refused to find that Stewart Title represented that the "title policy conferred or involved rights, remedies and obligations which it does not have or involve."

---

1. Cheatham did not seek a DTPA breach of warranty on the basis of Stewart Title's failure to pay and did not allege a lack of good faith by Stewart Title concerning the payments under the terms of the agreement or in failing to settle.

The jury also refused to find that Stewart Title acted "knowingly," or that Stewart Title failed to disclose the existence of the easement.[2]

The trial court rendered judgment for Cheatham, for $104,000 actual damages and trebled recovery in accordance with the mandatory provisions of Tex.Bus. & Com. Code Ann. § 17.50(a)(1) (Vernon 1977) for a total recovery of $312,000, plus pre- and post-judgment interest and attorney's fees.

Before proceeding with our analysis on the specific points of error, we shall first discuss which version of the DTPA is controlling in this case. Stewart Title contends that the case was tried by consent utilizing the 1979 version of the Act, because Cheatham's petition alleges that "written notice of claims have been given in the manner and form requested by the DTPA section 17.50(a), as amended in 1979" and further alleges its action in the format of the 1979 version of the Act. Stewart Title thus argues that a plaintiff can select the version of a statute to be used and disregard the statutory law actually in effect at the time of accrual of a cause of action if the defendant fails to object to his selection of law. Stewart Title offers no support for this argument, and we do not find it persuasive.

█ The version of the DTPA in effect at the time of the transaction (prior to the 1979 amendments, which took effect on August 27, 1979) governs disposition of the case. *LaSara Grain v. First Nat. Bank of Mercedes*, 673 S.W.2d 558 (Tex.1984); *Pennington v. Singleton*, 606 S.W.2d 682 (Tex.1980). In the present case, any damage occurred on the date that Cheatham purchased the property. It is undisputed that Cheatham bought the property on or about July 13, 1979, the date the policy was issued. Thus, the 1977 version of the Act governs disposition of this cause.

█ Stewart Title contends that it cannot be held liable under the 1977 version of the Act for failure to disclose facts of which it has no knowledge. In *Robinson v. Preston Chrysler–Plymouth*, 633 S.W.2d 500 (Tex.1982), the court held that a defendant "cannot be held liable under the DTPA for failure to disclose facts about which he does not know." In making this holding, the *Robinson* court agreed with the lower court's reasoning in distinguishing between a situation in which a party makes an untrue representation without knowledge of its truth or falsity and a situation in which a party omits certain facts from his representations because he does not know them. Thus, a failure to disclose facts or information by one who has no knowledge of those facts or that information is not a false, misleading or deceptive act or practice. There is no evidence that Stewart Title had any knowledge of the easement, but we must analyze the findings on the special issues to determine if there was a DTPA violation in spite of this lack of knowledge.

█ Stewart Title contends that it is not liable because it had no duty to disclose that the land was subject to an easement. In the opening paragraph the policy states that "Stewart Title ... for value does hereby guarantee ... [that] the Insured has good and indefeasible title" to the property. However, this language cannot be taken out of context, and the document must be read in its entirety to determine the significance and meaning of this language. The document in its entirety is a contract of indemnity which, despite the opening language guaranteeing good title, only contracts to pay the insured for damages upon the failure of the guaranty. *Southern Title Guaranty Co. v. Prendergast*, 494 S.W. 2d 154 (Tex.1973). A title insurance policy is a recognized legal document, and its legal significance is generally a matter of law. It is a contract of indemnity and not of guaranty. *Sattler v. Philadelphia Title Ins. Co.*, 192 Pa.Super. 337, 162 A.2d 22 (1960). Insurance is a contract by which one party for consideration assumes particular risks on behalf of another party and promises to pay him a certain or ascertain-

---

**2.** The jury was given specific instructions defining the term *failed to disclose* in that special issue, but in the earlier issue where the jury had found a failure to disclose, no definition was given.

able sum of money on the occurrence of a specified contingency. *Denton v. Ware*, 228 S.W.2d 867 (Tex.Civ.App.–Amarillo 1949, no writ), *overruled on other grounds, United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353 (Tex.1971).

■ Title insurance differs from other types of insurance. Most insurance policies insure against the loss or injury brought about by some future event; while title insurance policies insure against any unknown existing problem which could cause a defect or failure of title. The title insurance company is not a title abstract company employed to examine title, but rather it has a duty to indemnify the insured against loss suffered by defects in title. *Wolff v. Commercial Standard Insurance Co.*, 345 S.W.2d 565 (Tex.Civ. App.–Houston 1961, writ ref'd n.r.e.). In the absence of special circumstances, it owes no duty to the insured to examine or disclose defects in title. 11 W. Dorsaneo, *Texas Litigation Guide* § 256.04(3)(9a) (1988). By its lack of responsibility for disclosure, the title insurer is distinguished from the title abstractor, who is employed for the specific purpose of examining title. *Stone v. Lawyers Title Insurance Corp.*, 537 S.W.2d 55 (Tex.Civ.App.–Corpus Christi 1976), *aff'd in part and rev'd in part*, 554 S.W.2d 183 (Tex.1977); *Southern Title Guaranty Co. v. Prendergast, supra.*

■ Recovery under a title insurance policy is limited to the actual amount of loss which is proven to be caused by the title defect, not to exceed the amount of the policy coverage. *Lawyers Title Insurance Corp. v. McKee*, 354 S.W.2d 401 (Tex. Civ.App.–Fort Worth 1962, no writ). The liability insurance is controlled by the policy provisions. The language guaranteeing title is only for the purpose of entitling the

insured to the considerations set out in the policy in the event that there are defects or encumbrances in the title. To hold otherwise would mean that every time there is a loss under the risks covered by the policy, an insurance company commits an unfair trade practice. This was clearly not the purpose of the DTPA. The policy in this case is a contract entered into by the insurer and the insured in which Stewart Title agreed to indemnify Cheatham for loss under the risks covered by the policy.

The specific language of exclusion in Schedule B of the title policy reads as follows:

This policy is subject to the Conditions and Stipulations hereof, the terms and conditions of the leases or easements insured, if any, shown in Schedule A, and to the following matters *which are additional exceptions from the coverage of this Policy.* (Emphasis added.)

This is the section of the policy which lists restrictive covenants, liens, and easements. The language of the policy does not warrant that these are all of the exceptions, but excludes them from the coverage of the policy.

■ The meaning of an unambiguous indemnity contract is a question of law for the court. *UMC, Inc. v. Coonrod Electric Co.*, 667 S.W.2d 549 (Tex.App.–Corpus Christi 1983, writ ref'd n.r.e.). Considering the title insurance policy in its entirety and the law applicable to such policies, we find that Stewart Title had no duty to disclose that the land was subject to an easement and that the policy made no warranty to Cheatham that the land had no easements except for the purpose of agreeing to indemnify Cheatham under the terms of the policy.[3] This is not to say that there cannot be a violation of the DTPA when a title

---

3. Even if this had constituted a warranty instead of a contract of indemnity, the warranty must be considered in conjunction with the entire contract in cases involving the DTPA. For example, an automobile manufacturer breaches its warranty in failing or refusing to make needed repairs or replacements. *Chrysler Corp. v. McMorries*, 657 S.W.2d 858 (Tex.App.—Amarillo 1983, no writ). The fact that these defects de-

velop or the parts did not last for the warranty period was not the breach of warranty, but the failure to perform as agreed under the terms of the warranty was the breach of warranty. Thus, in the present case the defect in title did not breach the warranty, but a failure to indemnify as set forth in the terms of the agreement would constitute a breach of warranty.

insurance policy is involved.[4] The mere existence, however, of a title policy and a subsequent loss under the terms of that title policy because of an undisclosed easement is not such a violation.

Stewart Title contends that there is no evidence that it represented that the title policy conferred or involved characteristics, uses or benefits which it did not have or involve.

In reviewing a no-evidence point, the reviewing court considers only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex. 1981). If there is any probative evidence tending to support the finding of the jury, the no-evidence point must fail. *Sherman v. First National Bank in Center, Texas*, 760 S.W.2d 240 (Tex.1988); *Elliott v. Great National Life Insurance Co.*, 611 S.W.2d 620 (Tex.1981).

■ The record indicates that Cheatham never spoke to any representative of Stewart Title prior to, or at the time of, issuance of the title policy, and there is no evidence of any other oral or written representation by Stewart Title other than the title policy itself and the title report. Cheatham testified that he did not receive the title policy until approximately five months after the purchase of the property and that he did not read it until the problems involving the sewer easement arose. Mrs. Cheatham testified that she received a copy of a title report which stated under the phrase "easements and right of ways" that there were "none." She testified that a purchaser relies on a title report. Unilateral reliance does not create a cause of action. The reliance must be justified on the basis of some representation by the defendant. In the present case, it appears that the defendant not only did not invite such reliance, but clearly warned against it in its

title report. The title report in evidence begins on the first page with the following italicized statement:

CAUTION: PROTECTION IS AFFORDED ONLY UNDER THE TERMS OF THE PROPOSED POLICY. STEWART TITLE GUARANTY COMPANY ASSUMES NO LIABILITY FOR ERRORS OR OMISSIONS IN THIS REPORT OR FOR VERBAL STATEMENTS. This is a copy of a preliminary report made for use of Stewart Title Guaranty Company only, to determine whether a title insurance policy can be issued. If a copy is furnished to the parties to the transaction it is to facilitate preparation of the necessary instruments, to point out curative requirements, if any, and to show the results of the Company's title search (upon which only the Company may rely). None of the information contained herein, or the absence of other information, constitutes a representation to any party, other than the Company, as to the status of the title. If a title defect or encumbrance should exist which is not disclosed hereon, the Company shall not be liable by reason of furnishing this report or for any verbal statements related thereto. The Company shall not be liable for any title defect unless a title insurance policy is hereafter issued by it, insuring against such defect, and the applicable premium paid therefor, and the Company's liability then shall exist only under the terms of its policy (as prescribed by the State Board of Insurance) and as measured and limited thereby.

This instrument clearly was not prepared or furnished for Cheatham's use or reliance. Although the insurer must examine the title (or have someone do so on its behalf), this investigation is done for the insurer's own information in order to determine whether or not it will commit itself to issue a policy. The investigation is not done for the benefit of the party insured. *C & W Manhattan Association v. Attorney's Title Co.*, 614 S.W.2d 883 (Tex.Civ.

---

4. In the case of *Gibbs v. Main Bank of Houston*, 666 S.W.2d 554 (Tex.App.–Houston [1st Dist.] 1984, no writ), the court remanded the case to the trial court for a determination of the contention that the title company and seller had conspired to conceal information regarding a pre-existing lien against the property.

App.–Tyler 1981, writ ref'd n.r.e.); *Tamburine v. Center Savings Association*, 583 S.W.2d 942 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.)

As for the policy itself, its form is prescribed by the State Board of Insurance. Tex.Ins.Code Ann. art. 9.07 (Vernon Supp. 1988). Furthermore, the risks which are assumed under this type of contract as well as the premium rates to be charged by the title insurers for title insurance policies also must be approved by the State Board of Insurance. Tex.Ins.Code Ann. art. 9.07 (Vernon Supp.1988) & art. 9.21 (Vernon 1981). The policy invites reliance only for the purpose of being indemnified in accordance with the policy. We do not find any evidence that Stewart Title represented the title policy to confer or involve characteristics, uses or benefits which it did not have or involve.

■ Stewart Title also contends that the evidence is factually insufficient to support the jury finding that it engaged in an unconscionable action by omitting the easement.[5] We agree. The evidence is factually insufficient, as there is no evidence that Stewart Title took advantage of a lack of knowledge, ability, experience or capacity of Cheatham or that there was a gross disparity between the value of the title policy and the consideration paid for it.[6] As previously discussed, there is no proof of any act of misrepresentation made either by the policy or by a representative of the insurance company, and the mere issuance of a policy does not constitute a representation beyond its terms. Accord-

ingly, the evidence is insufficient to support the jury finding on this special issue.

■ Stewart Title also contends that imputed notice under the real property recording statutes operates as a total defense to a buyer's action for damages arising out of deceptive trade practices, citing *Houston Title Company v. Ojeda De Toca*, 733 S.W.2d 325 (Tex.App.–Houston [14th Dist.] 1987, no writ). This decision has since been reversed. In *Ojeda De Toca v. Wise*, 748 S.W.2d 449 (Tex.1988), the Supreme Court held that imputed notice under the recording statutes is not a defense to a deceptive trade practices action.

■ Stewart Title also contends that the limitation language contained by its policy prevents recovery of the $24,000 in consequential damages provided by the jury. Stewart Title did not plead this limitation under the terms of the policy as an affirmative defense. For an insurer to rely on policy limitations or exclusions as a defense, it must affirmatively allege both the defense and the specific limitation or exception. *International Security Life Ins. Co. of Dallas v. Harwood*, 503 S.W.2d 378 (Tex.Civ.App.–Corpus Christi 1973, no writ); *International Security Life Ins. Co. v. Powers*, 458 S.W.2d 936 (Tex.Civ. App.–Amarillo 1970, writ ref'd n.r.e.); Tex. R.Civ.P. 94. Cheatham specifically pled for consequential damages, but Stewart Title did not affirmatively raise a policy exclusion as a defense, thus waiving any right to rely on its limitations.

■ Stewart Title also contends that prejudgment interest was improperly

---

5. Unconscionability is made a cause of action in section 17.50(a)(3), and is defined by section 17.45(5). Tex.Bus. & Com.Code Ann. §§ 17.45(5), 17.50(a)(3) (Vernon 1977). A portion of this definition was provided to the jury in connection with the special issue. The definition provided was not correct. The statutory definition states that:

(5) "Unconscionable action or course of action" means an act or practice which, to a person's detriment:
(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person *to a grossly unfair degree;* or
(B) results in a gross desparity between the value received and consideration paid, in a

transaction involving transfer of consideration. (Emphasis added)

The definition provided to the jury was deficient in one key respect. The underlined portion of the definition requiring that the party take advantage *to a grossly unfair degree* was omitted, thus the jury was only required to find that Stewart Title took advantage of Cheatham to some degree. No objection to this improper instruction was raised either at trial or on appeal.

6. Cheatham correctly points out that Stewart Title did not have a point of error preserving a no-evidence complaint on this point.

awarded to Cheatham because there is no contractual basis which would allow recovery on a general pleading and Cheatham did not specifically plead for prejudgment interest. As a general rule, plaintiffs are required to plead for prejudgment interest sought at common law as an element of damages, but recovery of statutory or contractual interests may be predicated on a prayer for general relief. *Benavidez v. Isles Construction Co.,* 726 S.W.2d 23 (Tex.1987); *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985); *Republic Nat. Bank v. Northwest Nat. Bank,* 578 S.W.2d 109 (Tex.1978). When the contract does not contain a measure by which a sum payable can be ascertained, recovery of prejudgment interest is not available under the statutory provision found at Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929 (Tex.1988); *Cavnar, supra,* at 552–53. Prejudgment interest may still be awarded based on equity, but the judgment must conform to the pleadings in the cause. *Benavidez, supra,* at 25.

The policy terms limit maximum recovery for total loss to the face value of the policy, and contains a "proportionate reduction clause" that limits recovery on a partial loss to a specified ratio.[7] The policy states that the insurer is not liable in any amount until the interests are adjudicated and provides no contractual method of determining the amount of loss. Thus, the policy does not contain a measure by which a sum payable can be ascertained unless there is a total loss. The policy also does not provide an interest rate to be applied to any such recovery.

 Cheatham did not plead for prejudgment interest and did not request an amendment to specifically plead for such recovery. In *Benavidez, supra,* the Supreme Court held that not to allow such an amendment was an abuse of discretion by the trial judge. This holding makes it apparent that such a pleading is still required in a case where their recovery is based upon breach of contract and the contract does not provide a method of ascertaining the amount of the sum payable. *Perry Roofing Co., supra.* Accordingly, in the absence of a specific pleading, prejudgment interest is not available in this cause.

We reverse the judgment of the trial court and remand the case for a new trial in accordance with this opinion.

---

**7.** The formula is stated:

$X/A = B/C$ where

$X$ = insurer's liability (diminution in value at time of policy purchase)

$A$ = policy limit (value of property at time of policy purchase)

$B$ = value of outstanding interest (present)

$C$ = value of property without the outstanding interest (present)