MEMORANDUM OPINION




No. 04-02-00492-CV



ALAMO TITLE COMPANY, INC.,


Appellant



v.



LAND RESOURCES CORPORATION,


Appellee



From the 45th Judicial District Court, Bexar County, Texas


Trial Court No. 1999-CI-15372


Honorable Carol Haberman, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Karen Angelini, Justice

 Phylis Speedlin, Justice


Delivered and Filed: May 7, 2003


AFFIRMED

 Alamo Title Company, Inc. ("Alamo Title") appeals the trial court's judgment awarding Land
Resources Corporation ("Land Resources") $128,385.00 in damages based on a jury's verdict.
Alamo Title raises four issues on appeal, contending: (1) the award of damages was improper because
Alamo Title disclaimed liability in its title report; (2) the evidence is insufficient to support a finding
that Alamo Title breached a warranty or engaged in false, misleading, or deceptive acts by failing to
disclose; and (3) the award of damages is against the weight of the evidence. We affirm the trial
court's judgment.

Background


 Land Resources was in the business of buying properties and re-selling them for a profit. In
1996, Land Resources began purchasing properties at tax foreclosures. Reagan McCoy, a vice-president and general counsel for Land Resources, and Arthur Uhl, III, an attorney, met with Juan
Cavazos and Christopher Farley of Alamo Title to discuss acquiring title insurance before purchasing
the properties at the tax foreclosure sales. All of the witnesses agree that Alamo Title informed
McCoy that it could not issue title insurance before the purchase; however, a title report was
mentioned as an alternative for obtaining the judgment and lien information that Land Resources
wanted before it made a purchase. McCoy testified that he was given a brochure regarding title
reports by Cavazos. The brochure states that a title report is a "simple report that gives the last
record of the property and checks the property for any outstanding lien information. Also included
in this search is a check of the owner's name for any Abstract of Judgments, State or Federal Tax
Liens, or any other miscellaneous information." The brochure further states that the title reports are
used by financial institutions to check title for small loans and "are also used by attorneys for
foreclosure purposes or various other reasons." 

 Before receiving the title report at issue in the case, Land Resources had ordered and received
approximately one hundred title reports from Alamo Title. In requesting the title reports, Land
Resources used a form letter that stated, "As you know, we are using these title reports to purchase
property at tax foreclosure sales and thus are ordering these on the understanding that the title report
is of the same reliability and accuracy that is used in the title research for a title policy from your
company." No representative from Alamo Title ever contacted Land Resources to inform them that
the reliability was not the same. On each title report Land Resources received, the following
disclaimer was included:

 This title search is made at the request of the above company and accepted by them
with the understanding that we are not expressing or attempting to express any
opinion as to the validity of this title and/or any instrument recorded or unrecorded
affecting this title and we assume no liability in connection therewith.


Land Resources never contacted Alamo Title to question this disclaimer. McCoy testified that he
understood the disclaimer to relate to title ownership issues, not the accuracy of the lien information
contained in the title report. McCoy testified that he was unaware that the title report was not
researched with the same care taken in researching a title commitment.

 In February of 1999, Alamo Title provided Land Resources with a title report for two
condominiums in San Antonio. The title report stated that no liens were found. After purchasing the
condominiums, Land Resources discovered that a $2.2 million dollar federal tax lien existed against
the properties.

 Land Resources sued Alamo Title for various causes of action. The jury found Alamo Title
liable for (1) failing to comply with the agreement, (2) engaging in a false, misleading, or deceptive
act or practice; (3) engaging in any unconscionable action or course of action; (4) failing to comply
with a warranty; and (5) making a negligent misrepresentation. Based on the jury's liability and
damage findings, the trial court rendered judgment for Land Resources in the amount of $128,385.00.


Disclaimer


 In its first issue, Alamo Title asserts that the trial court erred in awarding damages because
Alamo Title disclaimed liability in its report. In the jury charge, the trial court instructed the jury that
it was the jury's duty to interpret the disclaimer.

 Alamo Title relies on Texarkana's decision in Stewart Title Guar. Co. v. Cheatham, 764
S.W.2d 315, 320 (Tex. App.--Texarkana 1988, writ denied), to contend that the disclaimer
precluded any reliance by Land Resources on the accuracy of the title report. However, unlike the
instant case, the Cheathams had never spoken to any representative of Stewart Title before receiving
the title report and the court noted that "there [was] no evidence of any other oral or written
representation by Stewart Title other than the title policy itself and the title report." Id. Furthermore,
Mr. Cheatham testified that he did not receive the title policy until five months after his purchase.
Id. Finally, the disclaimer in question stated: "CAUTION: PROTECTION IS AFFORDED ONLY
UNDER THE TERMS OF THE PROPOSED POLICY. STEWART TITLE GUARANTY
COMPANY ASSUMES NO LIABILITY FOR ERRORS OR OMISSION IN THIS REPORT OR
FOR VERBAL STATEMENTS." Id.

 In this case, the language in the disclaimer was ambiguous, creating a fact issue as to the
parties' intent. See Mastin v. Mastin, 70 S.W.3d 148, 152 (Tex. App.--San Antonio 2001, no pet.).
Furthermore, a buyer generally is not bound by a disclaimer contained in an agreement he is induced
to make because of a fraudulent representation. Prudential Ins. Co. v. Jefferson Assocs., Ltd., 896
S.W.2d 156, 162 (Tex. 1995). Based on the language included in Land Resources' letter regarding
the title report's reliability and the affirmative representations made both verbally and in the brochure
regarding the title report's inclusion of lien information, the jury could have found that the disclaimer
was not part of the agreement between Land Resources and Alamo Title or that the disclaimer related
only to title ownership and not to the validity of the lien information. Accordingly, the trial court did
not err in concluding that the disclaimer did not conclusively negate Alamo Title's liability as a matter
of law. See First Title Co. of Waco v. Garrett, 860 S.W.2d 74, 77 (Tex. 1993) (distinguishing
Cheatham and rejecting disclaimer of liability); Oakwood Mobile Homes, Inc. v. Cabler, 73 S.W.3d
363, 372 (Tex. App.--El Paso 2002, pet. denied) (holding trial court did not err in rejecting
disclaimers based on totality of the circumstances); Burleson State Bank v. Plunkett, 27 S.W.3d 605,
616 (Tex. App.--Waco 2000, pet. denied) (holding disclaimer was not unequivocal and did not
conclusively negate reliance as a matter of law). 

Liability


 In its second and third issues, Alamo Title challenges the sufficiency of the evidence to
support the jury's findings that it engaged in a false, misleading, or deceptive act, and breached a
warranty. As Land Resources notes in its brief, the jury also found that Alamo Title was liable for
making a negligent misrepresentation and for failing to comply with the agreement. Because Alamo
Title does not assign error to each of the jury's independent liability findings, the judgment may be
affirmed on the unchallenged liability findings, and we need not address Alamo Title's second and
third issues. See Texas Dept. of Public Safety v. Wilmoth, 83 S.W.3d 929, 931 (Tex. App.--Amarillo
2002, no pet.); Secure Comm, Inc. v. Anderson, 31 S.W.3d 428, 430-31 (Tex. App.--Austin 2000,
no pet.).

Damages


 In its final issue, Alamo Title challenges the sufficiency of the evidence to support the jury's
damage awards. Focusing our discussion on the damages awarded by the jury for the negligent
misrepresentation claim, McCoy testified that Land Resources paid $60,000 for the properties. Land
Resources paid an additional $5,000 to the owner in exchange for a quitclaim deed. Land Resources
obtained the quitclaim deed to acquire the owner's right of redemption and right to claim the excess
proceeds from the tax foreclosure sale, which is the amount by which the purchase price paid at the
foreclosure sale exceeded the amount of the taxes. In this case, the excess proceeds were
$39,325.91. Based on the excess proceeds, counsel for Alamo Title argued that Land Resources was
only out-of-pocket $25,670. An exhibit was introduced into evidence showing the income received
and expenses incurred in renting the condominiums. The exhibit showed a net loss of $1,830.94.
Thomas Powell, the owner of Land Resources testified that in addition to the expenses reflected in
the exhibit, Land Resources would be required to pay the 2001 taxes, which were approximately
$4,000, and repairs to one of the condominiums for damages by a tenant in the amount of $14,000.
In addition, Powell testified that he had incurred legal expenses in bringing the lawsuit, and Powell's
attorney estimated that her fees and expenses were $31,602. Both McCoy and Powell testified that
the value of the condominiums was approximately $130,000. The Bexar Appraisal District's
appraisal rolls for the condominiums were also introduced into evidence reflecting an appraised value
for one of the condominiums as $72,800 in 2001 and 2000, and $72,500 in 1999, and an appraised
value for the other condominium as $64,700 in 2001, $64,680 in 2000, and $59,000 in 1999.

 Alamo Title challenges the sufficiency of this evidence to support the jury's damage award
for the negligent misrepresentation claim by speculating about the manner in which the jury arrived
at the damage award. Such speculation is improper. We are only required to determine if the
evidence was sufficient to support the jury's award of $83,385 for damages sustained in the past and
$45,000 for damages that in reasonable probability will be sustained in the future. Taking into
consideration the foregoing evidence and the testimony regarding Land Resources' inability to sell
the condominiums due to the tax lien which Alamo Title represented did not exist in the title report,
we conclude that the evidence is sufficient to support the jury's damage award. Because lost profits
were not awarded as a measure of damages in regard to the negligent misrepresentation claim, we
do not address Alamo Title's separate challenges to the jury's lost profit awards.

Conclusion


 The trial court's judgment is affirmed.


 Alma L. López, Chief Justice