**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2594
_____

U.S. BANK NATIONAL ASSOCIATION,
as Trustee for the Benefit of the Certificate Holders Under the Pooling
and Servicing Agreement relating to the Mortgage Backed Pass
Through Certificates 2002-29,

Appellant

v.

FIRST AMERICAN TITLE INSURANCE CORPORATION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-10-cv-05201)
District Judge:  Honorable William H. Yohn, Jr.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 22, 2014
_____

Before:  McKEE, <u>Chief Judge</u>, CHAGARES, and GARTH, <u>Circuit Judges</u>.

(Filed: June 20, 2014)

_____

OPINION
_____

CHAGARES, Circuit Judge.

U.S. Bank National Association ("U.S. Bank") filed a lawsuit against First American Title Insurance Corporation ("First American") for breach of contract and bad faith under a title insurance policy with respect to a securitized mortgage of which U.S. Bank is the trustee. The District Court granted First American's motion for summary judgment and denied U.S. Bank's cross-motion for summary judgment. For the following reasons, we will affirm.

I.

We write solely for the parties and will therefore recount only those facts that are essential to our disposition. In July 2002, Allied Mortgage Group, Inc. ("Allied") issued an $868,500.00 loan to Christopher and Deborah Fekos. The loan was secured by a mortgage upon the real property owned by the Fekoses located at 99 Alexander Drive in McMurray, Pennsylvania. Allied purchased a title insurance policy from First American (the "Policy") insuring that its mortgage on the Fekos property was in first lien position. First American assigned the duties of closing and recording the mortgage — and of satisfying an existing mortgage on the property held by Beneficial Consumer Discount Company ("Beneficial") — to its then-agent Ideal Settlement Services, Inc. ("Ideal"). Ideal did not record the Allied mortgage until March 4, 2003, at which point intervening mortgages had been recorded by Centex Home Equity Co. ("Centex") and Bank Pittsburgh. Ideal also failed to satisfy the Beneficial mortgage.

Counsel for Fairbanks Capital Corporation ("Fairbanks"), servicer for the Allied mortgage, discovered the title defect and, on December 8, 2003, provided First American

2

with notice of a claim under the Policy. Appendix ("App.") 664. The December 8 letter specifically indicated that, under the terms and conditions of the Policy, First American was required to "take all actions, without unreasonable delay," to remove the adverse claims to the property. Id. First American responded one week later that it "st[ood] behind its policy as issued" and "w[ould] indemnify should [the policyholder] suffer a loss" attributable to the Beneficial, Centex, and Bank Pittsburgh mortgages. App. 666.

On December 26, 2003, Allied assigned the mortgage and title insurance policy to a securitized trust entitled "Certificate Holders Under the Pooling and Servicing Agreement Relating to the Mortgage Backed Pass Through Certificates Series 2002-29" (the "Trust"), of which Bank One, N.A. ("Bank One") was the trustee. See App. 796. On February 1, 2004, U.S. Bank purchased a book of the institutional trust business from Bank One and thus became the trustee of the Trust. See App. 855, 859 ¶ 18.

On August 2, 2005, Bank Pittsburgh obtained a foreclosure judgment against the Fekos property. The property was sold at a sheriff's sale to Bank Pittsburgh on October 7, 2005, discharging the Allied mortgage. Fairbanks notified First American of the sale, and reminded First American of its obligations under the Policy, in a letter dated June 29, 2006. App. 672–73. First American responded on July 27, 2006, informing Fairbanks that it had "initiated an investigation" and would contact Fairbanks "once the facts [were] ascertained." App. 675.

On March 23, 2007, First American filed a declaratory judgment action against JP Morgan Chase ("JP Morgan") and Ideal in the Court of Common Pleas of Washington County, Pennsylvania, seeking "an expeditious determination of the rights and

3

obligations of the parties" under the Policy, which First American mistakenly alleged was then held by JP Morgan as successor by merger to Bank One (the "Washington County action"). App. 679–80. JP Morgan compounded the pleading error by filing an answer, affirmative defenses, and counterclaims against First American under the Policy. In July 2010, the Trust moved to amend the case caption to "reflect the proper Trustee for the Trust, i.e., U.S. Bank." App. 304. The court denied the motion without explanation on August 24, 2010 and granted summary judgment to First American with regard to its declaratory judgment claim on April 1, 2011, on the basis that "U.S. Bank is the proper trustee in this matter, and First American owes no obligation to JP Morgan." App. 323, 329. The court further granted summary judgment to First American as to JP Morgan's counterclaims for breach of contract and bad faith, on the similar ground that JP Morgan was not "a party in interest." App. 329–30. The Superior Court of Pennsylvania affirmed.

On October 5, 2010, after its attempt to join the Washington County action proved unsuccessful, U.S. Bank (represented by the same law firm that represented JP Morgan) filed the instant action against First American in the United States District Court for the Eastern District of Pennsylvania. The parties filed cross-motions for summary judgment. The District Court granted First American's motion for summary judgment and denied U.S. Bank's cross-motion, on the grounds that U.S. Bank's breach of contract claim was time-barred and its bad faith claim failed as a matter of law. U.S. Bank timely appealed.

II.

4

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. This Court exercises plenary review over a district court's grant of summary judgment, applying the same standard employed by the district court. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). That is, we "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In doing so, "we view all evidence in the light most favorable to the nonmoving party." Kurns v. A.W. Chesterton Inc., 620 F.3d 392, 395 (3d Cir. 2010). We review a district court's decision whether to invoke equitable or judicial estoppel for abuse of discretion. In re Kane, 628 F.3d 631, 636 (3d Cir. 2010); Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir. 1989).

III.

A.

U.S. Bank first challenges the District Court's holding that its claim for breach of contract was barred by the applicable Pennsylvania statute of limitations.[1] "The statute of limitations begins to run on a claim from the time the cause of action accrues." S.T. Hudson Eng'rs, Inc. v. Camden Hotel Dev. Assocs., 747 A.2d 931, 934 (Pa. Super. Ct. 2000). "In general, an action based on contract accrues at the time of breach." Id.; Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999) ("It is hornbook

---

[1] The parties agree, as do we, that Pennsylvania law applies, as "[f]ederal courts sitting in diversity cases must apply the substantive law of the states in which they sit, and statutes of limitations are considered substantive." Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 552 (3d Cir. 1985) (citation omitted).

law that a statute of limitations begins to run as soon as the right to institute suit arises."). "[A] contract of title insurance is an agreement to indemnify against loss through defects of title." Sattler v. Phila. Title Ins. Co., 162 A.2d 22, 24 (Pa. Super. Ct. 1960). A "legal loss," triggering liability under a title insurance policy, therefore occurs "when the insured gets a bad title, or the policy has been otherwise breached." In re Gordon, 176 A. 494, 495 (Pa. 1935); see also Sattler, 162 A.2d at 25 (explaining that "the insured must show a loss resulting from the unexcepted encumbrances").

The District Court correctly determined that the latest date by which First American's contractual breach occurred was October 7, 2005, when the Fekos property was sold at a sheriff's sale and the Allied mortgage on the property — which, contrary to the Policy, was junior to three other liens — was divested, causing U.S. Bank, as trustee of the Trust to which the mortgage and Policy were assigned, to suffer a loss.[2] The statute of limitations for contract actions is four years. 42 Pa. Cons. Stat. § 5525. Because U.S. Bank filed suit approximately five years after the sheriff's sale, its contract claim was untimely. Cf. Bell v. Brady, 31 A.2d 547, 550 (Pa. 1943) (a plaintiff "cannot arrest the running of the statute [of limitations] by [its] own negligence or for [its] own convenience").[3]

---

[2] Contrary to U.S. Bank's position in its reply brief, that the extent of the loss was not definitely fixed does not affect when the limitations period began to run. See In re Gordon, 176 A. at 495.

[3] U.S. Bank insists that, under Pennsylvania law, a cause of action for breach of an insurance contract accrues when the insurer denies the claim, and such denial was never communicated by First American. U.S. Bank relies on nonbinding, factually inapposite caselaw that, in any event, has been abrogated. U.S. Bank Br. 29–30; see State Farm Mut. Auto. Ins. Co. v. Rosenthal, 484 F.3d 251, 257 (3d Cir. 2007) (holding that the

B.

"Once the prescribed statutory period has expired, the [plaintiff] is barred from bringing suit, unless some exception which tolls the statute of limitations can be proven." Ward v. Rice, 828 A.2d 1118, 1121 (Pa. Super. Ct. 2003). U.S. Bank argues that its contract claim should be allowed under the doctrines of equitable and judicial estoppel. We apply state equitable estoppel law and federal judicial estoppel law. G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 261 (3d Cir. 2009); see Bechtel v. Robinson, 886 F.2d 644, 650 (3d Cir. 1989).

"Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect." Novelty Knitting Mills, Inc. v. Siskind, 457 A.2d 502, 503 (Pa. 1983). "The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement." Id. "[T]he burden rests on the party asserting the estoppel to establish such estoppel by clear, precise[,] and unequivocal evidence." Blofsen v. Cutaiar, 333 A.2d 841, 844 (Pa. 1975). U.S. Bank contends that First American should be equitably estopped from asserting a limitations defense because it initially misidentified JP Morgan as the trustee of the Trust. However, there is no evidence that First American induced U.S. Bank to rely on the error. Even assuming that U.S. Bank could show inducement by First American, reliance upon First American's representation was not justifiable where

statute of limitations begins to run on an underinsured motorist claim when the insured settles his claim with or obtains an award from the underinsured driver), abrogating Motorist Mut. Ins. Co. v. Durney, No. Civ.A. 04-3232, 2005 WL 3470612, at *3 (E.D. Pa. Dec. 20, 2005) (holding that a cause of action accrues in the underinsured context when the insurer denies the insured's claim).

7

the identity of the trustee was clearly in U.S. Bank's possession — U.S. Bank being the trustee.[4]

Judicial estoppel also has no role to play. "The doctrine of judicial estoppel prevents a party from asserting inconsistent claims in different legal proceedings." In re Mintze, 434 F.3d 222, 232 (3d Cir. 2006); see also Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 121 (3d Cir. 1992) (judicial estoppel is designed to protect the courts, not the litigants). U.S. Bank contends that First American should be judicially estopped from arguing that the Washington County action communicated denial of U.S. Bank's claim for purposes of the statute of limitations. Because we hold that the statute of limitations began to run at the sheriff's sale, see supra, this argument is irrelevant.

In summary, the District Court correctly determined that U.S. Bank's contract claim was inexcusably time-barred. U.S. Bank does not contest the District Court's holding that its bad faith claim fails as a matter of law. It has thus waived the argument. See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994).

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

_____

[4] U.S. Bank also appears to assert that federal equitable tolling doctrine should apply. See U.S. Bank Br. 33–37. Even assuming that resort to federal equitable tolling doctrine is appropriate, there is no evidence that First American actively misled U.S. Bank regarding its cause of action, that U.S. Bank was prevented in "some extraordinary way" from asserting its rights, or that U.S. Bank timely asserted its rights mistakenly in the wrong forum. See In re Mushroom Transp. Co., Inc., 382 F.3d 325, 339 (3d Cir. 2004) (quotation marks omitted) (delineating when equitable tolling may apply). Rather, as the District Court aptly observed, U.S. Bank, as trustee, "attempted to assert its rights in the proper forum after the statute of limitations had already run."

8